612 A.2d 474

COMMONWEALTH of Pennsylvania, Appellee,

v.

Charles Robert WOOD, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 12, 1991.

Filed July 9, 1992.

John A. Roth, Latrobe, for appellant.

Emily L. Smarto, Asst. Dist. Atty., Greensburg, for Com., appellee.

Before WIEAND, McEWEN, OLSZEWSKI, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence imposed upon Wood after a jury convicted him of criminal attempt murder[1] and two counts of aggravated assault.[2] The trial court denied Wood's timely filed post-verdict motions and sentenced him to serve consecutive terms of imprisonment of two to four years for the criminal attempt murder and eight to sixteen years for the aggravated assault.[3] This appeal followed. We affirm.

1. 18 Pa.C.S. § 901(a) and § 2501(a) (Purdon 1983).

2. 18 Pa.C.S. § 2702(a)(1) and § 2702(a)(4) (Purdon 1983 & Supp. 1991), respectively.

3. Wood was convicted of aggravated assault under both 18 Pa.C.S. § 2702(a)(1) and § 2702(a)(4). At sentencing, Judge Loughran im-

In his appeal, Wood claims the trial court committed three errors: (1) refusing to permit Wood to undergo a psychiatric examination allegedly necessitated by his contradictory cross-examination responses; (2) denying Wood's offer of evidence of prior consistent statements he had made for the purpose of rebutting the Commonwealth's evidence; and (3) failing to merge Wood's convictions for aggravated assault and criminal attempt murder for sentencing purposes. Because Wood raised a merger issue akin to that presented in *Commonwealth v. Anderson*, 416 Pa.Super. 203, 610 A.2d 1042 (1992) the Superior Court unanimously certified this case for reargument *en banc.*

The facts adduced at trial are both simple and tragic. Wood shot his wife Louise in the hip with a twelve-gauge shotgun and then struck her on the head with the butt of the gun by using it as a club. The victim did not die, but is totally incapacitated, both mentally and physically, as a result of her husband's actions.

We note, initially, the trial court's observation that Wood's first and second arguments were not included in his post-trial motions. Wishing to afford Wood every opportunity to have his case reviewed, the trial court nevertheless addressed the merit of these issues. We will likewise address the merit of each issue.[4]

posed no sentence on the latter conviction of aggravated assault due to his belief that § 2702(a)(4) merged with § 2702(a)(1) for sentencing purposes. Neither party questions the propriety of this action and we shall not, therefore, address it. Our discussion will focus on whether the sentence on the single count of aggravated assault and one count of criminal attempt murder should merge for sentencing purposes.

4. By order dated March 22, 1990, the trial court allowed Wood to file additional post-trial motions ten days after the receipt of the trial transcript by counsel. Wood did not file any supplemental motions. However, when the trial court received Wood's brief in support of his post-trial motions, two issues were addressed that were not earlier raised. The trial court nevertheless heard arguments on these issues and rendered an opinion thereon. In such circumstances, we will not find waiver. *Cf. Commonwealth v. Sopota*, 403 Pa.Super. 1, 587 A.2d 805 (1991) (*en banc*) (this Court will consider issues raised in post-trial motions, filed without leave of court, if the trial court has addressed them on their merits).

▮

▮ The evidence fails to support Wood's claim that his cross-examination testimony demonstrated an inability to understand the proceedings or to cooperate with counsel in defending himself. *See Commonwealth v. Hazur*, 372 Pa.Super. 306, 539 A.2d 451 (1988) (test for competence is whether the defendant can comprehend his position as one accused of an offense and cooperate with his counsel in making a rational defense). Several facts support our conclusion. Initially, we note that throughout Wood's testimony, he answered a myriad of questions and used notes prepared ahead of time in reviewing and preparing his case for trial. Moreover, not until his cross-examination did Wood begin to show signs of "confusion," testifying to a different version of the events which generated this case. Indeed, the trial judge, who was in the best position to assess Wood's demeanor, believed Wood's inconsistency to be the result of an effective cross-examination, not incompetence: "The reason he is answering that way, he is now trapped, he doesn't know what to say. He is trapped in his own story." (N.T. 3/5–13/90 at p. 691). Additionally, Wood had undergone two psychiatric evaluations within five months of the trial. Neither of those evaluations indicated that Wood was incompetent to stand trial. Wood had also filed *pro se* motions concerning complicated legal issues. Finally, Wood's counsel considered him competent enough to take the stand in his own defense; not until his client was floundering on cross-examination did defense counsel request a psychiatric evaluation. In light of these facts, we cannot say the trial court abused its discretion in denying Wood's request for a hearing on his competence.

▮ Wood's second challenge is likewise meritless. Because defense counsel announced in his opening statement that he intended to present evidence that Wood feared his wife, due to her abusive behavior toward him, the trial court permitted the Commonwealth to introduce testimony regarding physical confrontations between Wood and his wife. At the beginning of his case, Wood then tried to call several witnesses who would testify to certain prior consis-

tent statements by Wood about physical confrontations with his wife in which she was the aggressor. Wood had not yet taken the stand, nor had his credibility been impeached by the prosecution. In Pennsylvania, prior consistent statements are hearsay when offered for the truth of their assertions. *Commonwealth v. Willis*, 380 Pa.Super. 555, 552 A.2d 682 (1988), *alloc. denied*, 522 Pa. 583, 559 A.2d 527 (1989). Such statements may be offered, however, to rehabilitate a witness whose credibility has been attacked with a charge of recent fabrication or faulty memory. The trial court's ruling in this case did not prevent Wood from calling his witnesses. Rather, the ruling dictated at what point in his case Wood could offer their testimony, i.e., not until after Wood had taken the stand and been subjected to an attack on his credibility. We find no error in the trial court's ruling.

Wood's third challenge implicates the merger doctrine. As stated above, Wood received consecutive sentences on the convictions of criminal attempt murder and aggravated assault. The trial court based Wood's sentence on its determination that Wood committed two independent criminal acts, i.e., shooting and bludgeoning his wife. According to the trial court, the act of shooting constituted an aggravated assault and the act of bludgeoning constituted an attempt to kill. Because the two crimes arose out of two separate acts, the trial court did not merge the offenses for sentencing purposes. On appeal, Wood raises several arguments: 1) whether a single act occurs depends on a defendant's *mens rea;* 2) a defendant should be sentenced according to his *mens rea;* and 3) because he had a single *mens rea* of attempting to kill his wife, which is a higher degree of *mens rea* than that required to commit aggravated assault, Wood should only have been sentenced according to the highest degree of *mens rea*. Wood further alleges that a sentence on the aggravated assault conviction, in addition to the attempted murder sentence, would make the aggravated assault statute a strict liability statute, e.g., in any situation where there was an attempted

murder caused by some violent act, the defendant would necessarily be guilty of aggravated assault once the attempted murder was established. Because we find that Wood committed two separate acts, we reject his *mens rea* argument and affirm the judgment of sentence.

The common law doctrine of merger was significantly altered by this Commonwealth's highest court in its recent decisions of *Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989), and *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989). In *Leon Williams*, the Pennsylvania Supreme Court granted an allowance of appeal to decide the question of when convictions merge, for sentencing purposes, when they arise from the same act. Under the facts presented, Williams pled guilty to aggravated assault, criminal attempt at robbery, and unlawful restraint. In concluding that the crimes of aggravated assault and unlawful restraint do not merge for sentencing purposes, the Supreme Court completely re-examined the doctrine of merger in Pennsylvania.

The Supreme Court began with an analysis of the two-prong merger test established two years earlier in *Commonwealth v. Michael Williams*, 514 Pa. 124, 522 A.2d 1095 (1987). The Court summarized the first prong of the *Michael Williams* test, i.e., that the crimes "necessarily involve" one another, as follows:

> Crimes "necessarily involve" each other, . . . if one of two possible scenarios occurs: (1) the crimes have the same elements (i.e., lesser included offenses), or (2) the facts of the case are such that although the elements of the crimes differ, the facts which establish one criminal charge also serve as the basis for an additional criminal charge.

*Leon Williams*, 521 Pa. 560, 559 A.2d at 27–28 (footnotes omitted). The Court then defined a lesser included offense as "a crime the elements of which are a necessary subcomponent but not a sufficient component of elements of another crime, the greater included offense." *Id.*, 521 Pa. 561, 559 A.2d at 28 n. 2. If the first prong of the *Michael*

*Williams* merger test was met, then a court had to determine whether the Commonwealth had substantially different interests in prosecuting the defendant for two or more separate crimes. In other words, a trial court had to decide what interests of the Commonwealth were at stake and how the particular facts of the case would bear on these interests.

While recognizing it promulgated this analysis for merger only two years before, the *Leon Williams* court concluded the analysis was flawed and must be abandoned. The Court opined that the governmental interests were difficult to define with any precise degree of certainty; also, the merger test of *Michael Williams* provided no guidance regarding merger based on governmental interests because the test did not establish how many offenses against the Commonwealth had been committed. Therefore, the Supreme Court rejected the *Michael Williams* governmental interest test and narrowed the test for merger in Pennsylvania to lesser included offenses:

> In view of these shortcomings of our merger analysis as it was expressed in [*Michael Williams*], we now hold that *except for lesser included offenses,* the doctrine of merger based on whether the Commonwealth has an interest in prosecuting a criminal defendant for more than one crime is hereby abrogated and abolished.

*Leon Williams*, 521 Pa. 564, 559 A.2d at 29 (emphasis in the original). While not explicitly expressed above, when the *Leon Williams* court stated that merger applies only to lesser included offenses, it also abandoned fact-based merger, i.e., merger based upon one set of operative facts establishing more than one crime.

The second case to alter Pennsylvania's merger doctrine was *Commonwealth v. Weakland, supra.* Weakland pleaded guilty or *nolo contendere* to various crimes arising from the murder of Cecil Rash and the robbery of a gas station owned by the decedent and his wife. Weakland pleaded guilty to two counts of robbery and one count of criminal conspiracy, and entered a plea of *nolo contendere* to one count of kidnapping, four counts of aggravated

assault, one count of theft, and a general charge of homicide. Following denial of post-trial motions, the trial court sentenced Weakland to life imprisonment on the murder conviction (at a degree of guilt hearing, a three judge panel had determined that Weakland was guilty of first degree murder), and fifty-three and one-half to one hundred seven years imprisonment on the remaining charges.

The *Weakland* Court summarized the facts supporting these convictions as follows:

The facts in this case are that [Weakland] and his brother Robert conspired to rob a service station owned by Cecil and Florence Rash. [Weakland] entered the repair bay of the station, where Cecil Rash was working on a car, struck him with a wrench, knocking him to the ground, and removed $51.00 from his wallet. He then entered the office of the station, where his brother Robert was holding Mrs. Rash. One of the brothers then tore the telephone from the wall, and Robert assaulted Mrs. Rash. Both brothers took money and other items from the service station, and placed them in their car. The two robbers were approaching their car when Mrs. Rash, who had been thrown to the ground outside the station, got up and shouted to an approaching customer that the station was being robbed and that the customer should leave and call the police. [Weakland], who was apparently not far from Mrs. Rash when she warned the customer, started to pick up a cinder block which was used to anchor an air hose. At that point, Mr. Rash, covered with blood, and without his glasses, emerged from the garage, armed with a .22 caliber nine-shot revolver. He ordered [Weakland] not to hurt his wife, and then fired at him, wounding him in the leg. [Weakland] fell to the ground and crawled a short distance away. Robert began throwing bottles at the Rashes from behind the Weaklands' car, and Mr. Rash fired at least once at Robert, but to no avail. [Weakland] also began throwing items at the Rashes, and after he hit Mr. Rash with a trashcan, he rushed him and the two men

wrestled for the gun. While the two men wrestled, Mrs. Rash repeatedly struck [Weakland] on the head with a large tire gauge until it broke, and then turned to wave for help from passing motorists. [Weakland] finally got the gun from Mr. Rash and fired at Mrs. Rash, striking her in the fingers and arm. He then fired twice at Mr. Rash, striking him in the heart and killing him.

By the time [Weakland] shot Mr. Rash, a witness, Edwin Wilson, had pulled his car into the service station, and was standing in front of his car, three or four paces from [Weakland], when the shooting occurred. [Weakland] then rushed the [sic] Mr. Wilson, striking him in the head with the gun. The two struggled, and then stopped when [Weakland] told the witness that he did not want to have to kill him. Mr. Wilson said that he did not want to be killed, but then [Weakland] struck him again in the face with the gun and forced him into Mr. Wilson's car. Mr. Wilson was then required to push the Weaklands' car with his car to start it and to drive his own car from the station with [Weakland] as a passenger. Shortly thereafter, Mr. Wilson was forced from the car and [Weakland] used it to perfect his escape.

*Weakland*, 521 Pa. 358–359, 555 A.2d at 1230–31.

The Supreme Court granted the Commonwealth's petition for allocatur in *Weakland*, in order to consider whether this Court properly treated the merger questions raised by Weakland's convictions. The merger questions involved merger of two of the four assault charges with other convictions; one into another assault charge and the other into a kidnapping charge.

The first merger question dealt with the two assaults upon Mrs. Rash; initially, when Weakland's brother ripped the telephone off the wall and, secondly, Weakland's assault upon her when he shot her. Weakland was charged with violations of the Pennsylvania Crimes Code, specifically, section 2702(a)(1), causing or attempting to cause serious bodily injury to another, and section 2702(a)(4), causing or attempting to cause bodily injury with a deadly weapon.

Deciding that merger of these two assaults was appropriate, this Court declined to consider evidence presented at a degree of guilt hearing, in addition to those facts presented at the guilty plea colloquy. The reason for omitting this evidence was because it did not serve as part of the factual basis of the plea. This state's high court disagreed:

> [I]f the defendant has the right to participate with counsel in a contested proceeding during which disputed issues of fact are resolved, it matters not whether the evidence is admitted at a hearing during which the plea is accepted, at another hearing at which degree of guilt is determined, or just prior to sentencing at the sentencing hearing. So long as the evidence is properly admitted by the court prior to sentencing, and so long as the defendant has the right to challenge it, it may be considered for sentencing purposes.

*Weakland*, 521 Pa. 357, 555 A.2d at 1230. Upon considering this additional testimony, the Supreme Court found sufficient independent facts to support both the 2702(a)(1) [5] and the 2702(a)(4) convictions. Consequently, the Supreme Court held that this Court erred in merging these two aggravated assault convictions.

The second merger question involved the propriety of this Court's holding that one of the aggravated assault charges arising from Weakland's contact with Mr. Wilson merged with the charge of kidnapping Mr. Wilson. Although this Court found two distinct assaults upon Mr. Wilson and did not, therefore, merge those convictions, i.e., under § 2702(a)(1) when Weakland hit Mr. Wilson several times with the gun and under § 2702(a)(4) when he shoved the barrel of the gun into Mr. Wilson's face and forced him into the car, this Court held that the latter assault merged with the kidnapping conviction because it was the same act which the Commonwealth relied on to prove the force necessary to establish the elements of the kidnapping

5. The Pennsylvania Supreme Court also stated that, even though the initial assault upon Mrs. Rash was committed by Weakland's brother Robert, Weakland was responsible as an accomplice.

charge. Finding that the second assault and the kidnapping were, in effect, one crime, this Court merged the convictions for sentencing purposes.

 In its appeal, the Commonwealth alleged that the necessary force required for a kidnapping conviction was present in the case, *in addition to* the force described in the above aggravated assaults. In essence, the Commonwealth's theory was that the continued threat posed by the weapon supplied the threat of force necessary for the kidnapping conviction separate and apart from the second assault inflicted upon Mr. Wilson by Weakland shoving the barrel of the gun into Wilson's face. The Supreme Court began its merger analysis by stating:

> Although we have this day repudiated the test for merger set out in Superior Court's *Commonwealth v. Leon Williams* as it relates to whether discreet "Commonwealth interests" have been implicated by two separate convictions arising from one criminal transaction, *see Commonwealth v. Leon Williams,* [521 Pa. 556, 559 A.2d 25 (1989)], we nevertheless agree with Superior Court that it would be an abuse of the merger doctrine if it were used to give the criminal "rights" to unlimited violence in perpetrating any of the crimes requiring violence or threat of violence as an element.

*Weakland,* 521 Pa. at 362, 555 A.2d at 1232. Then, following a citation to this Court's reasoning in *Commonwealth v. Leon Williams,* 344 Pa.Super. 108, 496 A.2d 31 (1985), the *Weakland* court continued as follows:

> We agree with Superior Court that when multiple acts of violence accompany another crime which requires violence or threat of violence as an element, convictions of multiple violent acts should not merge for sentencing purposes beyond that which is necessary to supply the element of violence or threat for the additional crime.

*Weakland,* 521 Pa. at 363, 555 A.2d at 1233. The Supreme Court then distinguished the merger question presented in *Weakland* from that presented in *Leon Williams:*

In this case, as in the companion case of *Commonwealth v. Leon Williams*, [521 Pa. 556, 559 A.2d 25 (1989)] also decided this day, it has been our goal to simplify and explain the doctrine of merger as it relates to the facts presented. In *Leon Williams* we held that where the same facts are used to support convictions for crimes having different elements, the crimes do not merge for sentencing purposes, unless the same facts support convictions of lesser included offenses. That holding does not apply to the present case because the problem here is not whether the same facts support multiple convictions, but whether facts in evidence *additional* to those facts establishing aggravated assault, i.e., that [Weakland] continued to threaten Mr. Wilson with a handgun, should have been used to satisfy the threat or force requirement of kidnapping[,] ... for otherwise, a violent criminal would be permitted to perpetrate multiple crimes while suffering only partial liability for the harm he has wrought.

*Weakland*, 521 Pa. at 363–364, 555 A.2d at 1233 (emphasis in original). The Supreme Court concluded its analysis by summarizing the newly announced merger doctrine as follows:

For the foregoing reasons, we hold that if a person commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime. If, however, the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes. In this case, merger of the aggravated assault conviction into the kidnapping conviction was inappropriate because the act of holding Mr. [Wilson] at gunpoint was separate and apart from the aggravated assault and was sufficient to supply the element of threat necessary for the kidnapping conviction.

*Id.* While not essential to the merger analysis in the present case, it should be noted that, under the single act

theory of merger, it is only the lesser included offense test, not the broader "necessarily included" test, which determines merger. *See Commonwealth v. Anderson*, 416 Pa.Super. 203, 610 A.2d 1042 (1992).

■ The facts of the case *sub judice* present an instance where the holding of *Weakland* is clearly controlling. Wood attempted to, and did in fact, cause serious bodily injury to his wife by shooting her in the hip; this fact alone was sufficient to support the aggravated assault conviction. In addition, Wood, by bludgeoning his wife with the gun stock, committed an additional criminal act beyond that necessary to establish the crime of aggravated assault. This additional act was sufficient to establish the substantial step necessary to support Wood's conviction of attempted murder. The two crimes, based on separate criminal acts of violence, do not merge for sentencing purposes. We likewise cannot accept Wood's argument that a defendant's *mens rea* determines how many criminal acts occurred and, once again, note that both attempted murder and aggravated assault are crimes with different specific intents that do not merge for sentencing purposes. *See Commonwealth v. Anderson, supra.* For these reasons, we affirm the separate sentences imposed by the trial court.

Judgment of sentence is affirmed.

WIEAND, J., files a dissenting opinion in which McEWEN, DEL SOLE and BECK, JJ., join.

WIEAND, Judge, dissenting:

The majority holds that appellant's convictions for aggravated assault and attempted murder do not merge for purposes of sentencing because the convictions were based upon different criminal acts. According to the majority, appellant's conviction for aggravated assault was based upon his act of shooting his wife in the hip, while his conviction for attempted murder was based upon his subsequent act of striking his wife in the head with the butt of the shotgun. This, however, is contrary to the charges

made against appellant in the information. While I agree that crimes which are based upon separate criminal acts should not merge, my review of the record in the instant case causes me to conclude that appellant's convictions for aggravated assault and attempted murder were based upon the same factual predicate, namely, the combined acts of shooting and bludgeoning his wife with the gun. He was not charged and the jury was not instructed to find that the separate acts of shooting and bludgeoning constituted separate crimes.

The current test used to determine whether offenses should merge for purposes of sentencing was established by the Supreme Court in *Commonwealth v. Williams*, 521 Pa. 556, 559 A.2d 25 (1989) and *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989). This test has been summarized by the Superior Court as follows:

> In order for offenses to merge, one offense must be a "lesser included offense" of the other, *i.e.* the elements of the lesser offense must be identical to and capable of being wholly subsumed within the elements of the greater offense, and the factual predicate for the lesser included offense must also be part of the factual predicate *required* to establish the greater offense.

> Our Supreme Court has thus adopted what amounts to a conclusive presumption of legislative intent, or a rule of statutory construction, which provides that the legislature will be conclusively presumed to have intended to vindicate any and all interests violated by a lesser included offense in the authorized penalty for the greater offense, and that when the legislature creates an offense whose elements cannot be wholly subsumed within those of another offense, the legislature will be conclusively presumed to have identified a separate interest to be separately vindicated. The only exception to these bright line rules or presumptions applies when facts other than those *required* to support the greater offense support a conviction for an otherwise lesser included offense.

*Commonwealth v. Yates,* 386 Pa.Super. 282, 287–288, 562 A.2d 908, 911 (1989) (citations omitted).

In my judgment, aggravated assault is a lesser included offense of attempted murder; and, therefore, when a defendant has been convicted of both of these offenses because of the same criminal conduct, his convictions merge for purposes of sentencing. See: *Commonwealth v. Anderson,* 416 Pa.Super. 203, 610 A.2d 1042 (1992) (en banc) (Wieand, J., dissenting). Therefore, the issue in the instant case is whether the same factual predicate was the basis for convicting appellant of both aggravated assault and attempted murder.

My review of the record discloses that appellant was charged by criminal information with attempted murder, with one count of aggravated assault under 18 Pa.C.S. § 2702(a)(1)[1] and with a second count of aggravated assault under 18 Pa.C.S. § 2702(a)(4).[2] However, it was alleged by the Commonwealth in *each* count of the information that the crime had been committed by appellant when he "shot Louise Wood with a twelve-gauge shotgun and then struck her in the head at least two times using the shotgun as a club." In accordance therewith, the trial court instructed the jury that the charge of attempted murder and both counts of aggravated assault were based upon the same alleged conduct, i.e., the shooting of appellant's wife and striking her with the shotgun. Thus, appellant's convictions for attempted murder and both counts of aggravated assault were based upon precisely the same factual predicate.

**1.** Pursuant to 18 Pa.C.S. § 2702(a)(1), "[a] person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." This offense is graded as a felony of the first degree. 18 Pa.C.S. § 2702(b).

**2.** Pursuant to 18 Pa.C.S. § 2702(a)(4) "[a] person is guilty of aggravated assault if he attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." This offense is graded as a felony of the second degree. 18 Pa.C.S. § 2702(b).

Thereafter, the trial court concluded that appellant's conviction for aggravated assault under § 2702(a)(4) merged with the conviction for aggravated assault under § 2702(a)(1),[3] but the court refused to merge the aggravated assault into appellant's conviction for attempted murder.

I would hold, under the circumstances of this case and for reasons stated in my dissenting opinion in *Commonwealth v. Anderson, supra,* that the crimes of aggravated assault and attempted murder in this case merged for purposes of sentencing. All crimes consisted of a single, factual predicate, i.e., the shooting *and* bludgeoning of appellant's wife. Because the majority has reached a contrary conclusion, I respectfully dissent.

McEWEN, DEL SOLE and BECK, JJ., join in this dissenting opinion by WIEAND, J.

---

**3.** Although I express no opinion regarding the correctness of this determination by the trial court, it is eminently clear therefrom that the trial court found that the same factual predicate had been the basis for both aggravated assault offenses.