626 A.2d 627

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James SWINSON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 29, 1993.

Filed June 16, 1993.

168

---

Fred A. Faber, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, and HUDOCK and BROSKY, JJ.

**HUDOCK, Judge:**

This is an appeal from the judgment of sentence imposed upon Appellant after he was found guilty by a jury of robbery,[1] theft,[2] receiving stolen property,[3] and criminal conspiracy.[4] Timely filed post-verdict motions were denied by the trial court, and Appellant was sentenced to concurrent terms of not less than three (3) years nor more than ten (10) years for the crimes of robbery and criminal conspiracy.[5] A direct appeal was filed and dismissed by this Court without prejudice to Appellant's rights under the Post Conviction Relief Act,[6] as a result of appellate counsel's failure to file a brief for Appellant. On August 26, 1992, Appellant, through court appointed counsel, filed a petition pursuant to the Post Conviction Relief Act. Appellant's petition was granted and Appellant's right to appeal from the judgment of sentence entered on August 22, 1989, was reinstated *nunc pro tunc.* This appeal followed. We affirm.

The facts and procedural history are ably summarized by the trial court as follows:

On November 30, 1987, at approximately 8:00 P.M., security guard John R. Holland was driving in the vicinity of 58th and Master Streets, Philadelphia, Pa. Needing to urinate, Mr. Holland stopped his car by the curb, exited the car and opened the trunk to shield himself from the view of others. Inside the trunk were tools and two handguns, a .25 caliber pistol and a .38 caliber Derringer. Holland heard a noise and the trunk of the car was slammed against his chest. He looked up and saw four black males standing around him. Holland positively identified two of those men as [defendant] Mark Freeman and [Appellant] James Swinson.

1.  18 Pa.C.S. § 3701.
2.  18 Pa.C.S. § 3921.
3.  18 Pa.C.S. § 3925.
4.  18 Pa.C.S. § 903.
5.  The crimes of theft and receiving stolen property merged for sentencing purposes. *See Commonwealth v. Yancey,* 301 Pa.Super. 427, 447 A.2d 1041 (1982).
6.  42 Pa.C.S. § 9541 *et seq.*

[Appellant] locked his arm around Holland and removed a wallet from his jacket pocket which contained his driver's license and $70. Freeman took three rings from his fingers. Freeman then indicated that they should take the guns. The four men fled with the wallet and the two handguns. [Appellant] had the .25 caliber pistol. Holland sustained no injuries. Holland reported the incident to the police and gave accurate descriptions of both Freeman and [Appellant]. He also supplied the police with receipts for the two handguns.

On December 3, 1987, at approximately 11:40 A.M., Arthur Klein was inside his shop, located at 4019 W. Girard Avenue [Philadelphia]. Klein was in the business of leasing properties. [Defendant Freeman and Appellant] were admitted by Klein. They asked to view an apartment that he had for rent. As Klein led the pair to a desk at the rear of the shop, he was attacked from behind. [Appellant] started punching Klein in the face; Freeman held a .25 caliber pistol to his head. Klein, who had a gun himself, shot Freeman. Freeman fell to the floor. Klein took Freeman's pistol. During a struggle with [Appellant], Klein dropped Freeman's pistol onto a shelf, but retained hold of his own gun. He was able to shoot [Appellant], who fell to the floor. [Freeman and Appellant] were arrested.

The .25 caliber pistol which had been wielded by Freeman was the same one which had been stolen from Holland on November 30, 1987.

On June 2, 1988, Detective George E. Myers, who was in charge of the Klein investigation, interviewed Holland in his home regarding the theft of this handgun the previous November. Later that evening, Myers returned to Holland's home with two photographic arrays, one containing the picture of Freeman and one containing the picture of [Appellant]. [Each photographic array contained eight pictures of black males.] Holland identified the photos of both [Freeman and Appellant.] On June 3, 1988, Holland came to City Hall to testify with respect to the Klein matter. As soon as he entered the courtroom, he saw [Freeman and

Appellant] and recognized them. He reported that fact to a district attorney in the courtroom and to Detective Myers, who was out in the hallway. Holland again looked at the photo arrays and once more identified [Freeman and Appellant.]

Trial Court Opinion, September 27, 1989, at pp. 2–3. Subsequently, Appellant and Freeman were arrested in connection with the November 30, 1987, robbery of Holland. Thereafter, Holland identified Appellant and Freeman in court at the preliminary hearing in the instant matter.

On appeal, Appellant presents the following questions for review:

1. Whether the court below erred by allowing into evidence [sic] concerning out-of-court identifications of Appellant and his Co–Defendant, and be [sic] allowing the Complaintant [sic] to make an in-court identification[?]

2. Whether the court below erred by allowing into evidence testimony about other crimes alleged to have been committed by Appellant and his Co–Defendant[?]

3. Whether the court below erred in permitting into evidence the testimony of Police Detective John Peterson, who read to the jury a statement purportedly given to him by the complaintant [sic] and was such error compounded by the court's failure to give cautionary instructions as to the limited purpose for which such testimony, if admissible at all, could be used[?]

4. Was trial counsel ineffective for failing to request the cautionary instructions referred to in question 3, i.e., that the "prior consistent statement" could be considered in assessing credibility only, and could not be considered as substantive evidence[?]

Appellant's brief at p. 2.[7]

Appellant first argues that the trial court erred in denying his motion to suppress the identifications of him by Mr.

7. Appellant's first two claims present the same facts and issues as were rejected by a panel of this Court in a related case involving Appellant's co-defendant, Freeman. However, because that decision was in an

Holland. Appellant contends that the June 2, 1988, photo identification by Mr. Holland was unduly suggestive and unreliable and that it rendered the subsequent in-court identification of him inadmissible. Specifically, Appellant asserts that Mr. Holland was permitted to examine front and side views when examining the photo array, and that the side view photographs contained biographical information, which included police photo numbers, age, names, and crimes previously charged. Thus, Appellant argues that it was clear to Mr. Holland that the photographs were "mug shots." Appellant also contends that Mr. Holland was only able to identify his photo from the side view, which he alleges is impermissible due to the biographical information printed thereon. Appellant concludes that, because the initial photographic array was unduly suggestive, the robbery occurred at night and the area was dark, the identification at trial did not have an independent basis from the tainted out-of-court procedure. Accordingly, the trial court erred in permitting the identification testimony of Mr. Holland to be used at trial.

In reviewing claims of suggestive identification procedures, and whether identifications resulting from such procedures are admissible, " 'we must determine whether the identification procedure was so suggestive and conducive to irreparable mistaken identity so as to deny the accused due process.' " *Commonwealth v. Ennis,* 394 Pa.Super. 1, 14, 574 A.2d 1116, 1122 (1990) (*Quoting Commonwealth v. Thomas,* 363 Pa.Super. 348, 352, 526 A.2d 380, 381 (1987), *alloc. den.,* 517 Pa. 616, 538 A.2d 498). *See also, Commonwealth v. Hughes,* 521 Pa. 423, 555 A.2d 1264 (1989) (pictorial identification is unduly suggestive when it gives rise to a substantial likelihood of irreparable misidentification). Our scope of review in evaluating the trial court's denial of Appellant's motion to suppress has been summarized as follows:

unpublished memorandum opinion, it cannot be relied upon nor cited for precedential value. *Commonwealth v. Sperry,* 395 Pa.Super. 400, 404 n. 4, 577 A.2d 603, 605 n. 4 (1990); *Commonwealth v. McPherson,* 368 Pa.Super. 274, 278 n. 4, 533 A.2d 1060, 1062 n. 4 (1987). *See also,* Internal Operating Procedures of the Superior Court § 65.37.

... In reviewing this ruling our initial task is to determine whether the factual findings are supported by the record. "In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted." ... If, when so viewed, the evidence supports the factual findings we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are in error ...[.] [Citations omitted.]

*Commonwealth v. Henry,* 410 Pa.Super. 324, 327, 599 A.2d 1321, 1322 (1991), (*quoting Commonwealth v. Fahy,* 512 Pa. 298, 309, 516 A.2d 689, 694–95 (1986)). "It is, however, exclusively the province of the suppression court to determine the credibility of witnesses and the weight to be accorded to their testimony." *Commonwealth v. Brinkley,* 423 Pa.Super. 289, 291, 620 A.2d 1226, 1227 (1993) (*quoting Commonwealth v. Neely,* 298 Pa.Super. 328, 341, 444 A.2d 1199, 1205 (1982) *overruled on other grounds in Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983)).

In the instant case, the defense presented no witnesses at the suppression hearing and the Commonwealth's evidence remained uncontradicted. At the hearing, Holland testified that it was dark when he was accosted by three or four black men. However, he further testified that the incident lasted approximately thirty seconds and that, after being grabbed from behind, he was spun around so that he was face to face with Appellant, at which point he clearly was able to view Appellant's face. Holland also stated that he viewed the eight photographs on June 2, 1988, at his home, and on June 3, 1988, in the hallway at the courthouse while testifying in the Klein case. On both occasions, he identified Appellant; on both occasions, he signed and dated the back of the photograph. Holland and Detective Myers both testified that Detective Myers did not in any way suggest he had a suspect that might be in any of the photo spreads shown to Holland, nor that any of the men pictured in the photographs were to be present the following day in the Klein case. Holland and Detective Myers

stated that Holland was only told he was to report to testify in the Klein case as to the identity of his .25 caliber pistol, and that he was no longer in possession of the gun. Although Holland did testify that when he viewed the photo arrays he saw both the front view and the side view of the individuals in the photographs, Detective Myers testified that the manner in which the photographs were arranged allowed for only a frontal view, and that Holland had seen the side view only after he had identified Appellant and pulled the photograph out of the binder, the side view photo of Appellant being beneath the frontal view photo. The suppression court found Holland to be credible as to his testimony, but somewhat confused. Detective Myers further testified that, in compiling the photographic array, he selected seven photos of other black males that closely resembled Appellant.

▮▮▮ In reviewing the evidence presented, we find that the trial court's findings of fact and conclusions of law are supported by the record. In this Commonwealth, there exists no per se rule against the use of "mugshots" as a form of identification. *Commonwealth v. Cambridge*, 386 Pa.Super. 542, 546, 563 A.2d 515, 517 (1989), *alloc. den.*, 525 Pa. 624, 578 A.2d 411 (1990). Rather, the use of photographs during an identification procedure must be analyzed under the facts and circumstances of each particular case. *Cambridge*, 386 Pa.Super. at 546, 563 A.2d at 517. Likewise, the fact that the detective's and the victim's testimony differ as to the manner in which the police conducted the identification procedure is not fatal. *Commonwealth v. Hughes, supra*, 521 Pa. at 440–41, 555 A.2d at 1273. Such inconsistencies do not provide a basis for suppression because the suppression court, as fact-finder, has the duty of determining the weight and credibility of the testimony. *Id.* In this instance, the suppression court found that, although Holland's testimony was credible, he was somewhat confused as to the manner in which the photographs were shown to him. Because this conclusion is adequately supported in the record, Appellant's argument to the contrary must fail.

Having concluded that the pre-trial photographic identification procedure was not unduly suggestive, we need not address Appellant's argument that Holland lacked an independent basis for his in-court identification of Appellant, as such identification was not tainted by the photographic array. *See Commonwealth v. Nelson,* 399 Pa.Super. 618, 582 A.2d 1115 (1990), *alloc. den.,* 527 Pa. 664, 593 A.2d 840 (1991); *Commonwealth v. Hughes, supra.*

■ Appellant next argues that the trial court erred in allowing into evidence testimony regarding the December 3, 1987 assault upon Mr. Arthur Klein. Klein testified as to the incident where Appellant and Freeman, using Holland's gun, attacked him in his store while inquiring about an apartment Klein had for lease. Appellant contends that this testimony, which reiterated the facts of the Klein incident (specifically that Freeman held a gun to Klein's head while Appellant shouted "shoot him, shoot him") was clearly prejudicial and, in essence, permitted the jury to try two cases. We disagree.

Generally, evidence of other unrelated criminal conduct of an accused is inadmissible at trial except in limited circumstances. *Commonwealth v. Morris,* 493 Pa. 164, 175, 425 A.2d 715, 720 (1981). This rule originated because, "the commission of one crime is not proof of the commission of another, and the effect of such evidence is to create prejudice against the defendant in the jury's mind." *Morris,* 493 Pa. at 175, 425 A.2d at 720.

[T]here sometimes exist special circumstances which operate as exceptions to the general rule and bring the case within the equally well established principle that evidence of other crimes is admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the

other. (citation omitted). When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value. (footnote omitted).

*Commonwealth v. Scarfo,* 416 Pa.Super. 329, 384–85, 611 A.2d 242, 269 (1992) (*quoting Commonwealth v. Peterson,* 453 Pa. 187, 197, 307 A.2d 264, 269 (1973)). When a particular exception applies, "the trial court must balance the need for the evidence against its potential prejudice in order to determine its admissibility." *Commonwealth v. Nelson,* 389 Pa.Super. 417, 425, 567 A.2d 673, 677 (1989), *alloc. den.,* 527 Pa. 623, 592 A.2d 44 (1990). Furthermore, "[a] trial court's decision to admit evidence of other crimes committed by a defendant will not be reversed on appeal unless the trial court abused its discretion." *Nelson,* 389 Pa.Super. at 425, 567 A.2d at 677.

In the within action, Appellant argues that the Klein incident does not fall within any of the above exceptions, and, as such, any evidence of that crime was inadmissible. Specifically, Appellant alleges that he was charged with an unarmed "hit and run" robbery that lasted thirty seconds in which no threat was made to Mr. Holland's life. He thus contends that the Klein matter, which involved a loaded gun and the threat upon Klein's life, is too remote and unrelated to the within action to be admissible. The trial court, however, found that the fact that the defendants used the same gun during the Klein incident on December 3, 1987, that was stolen from Holland on November 30, 1987, tended to establish the identity of Appellant and Freeman as the men who had robbed Holland. The court then determined that, although the evidence of the subsequent crime of violence was prejudicial, the prejudice to Appellant was far outweighed by its relevancy and importance to the Commonwealth's case because its identification evidence was subject to challenge; i.e. Mr. Holland was in his sixties, the robbery occurred at night, he was only able to see the robbers' faces for about thirty seconds, and the photographic identifications did not take place until six months after the robbery. *See* trial court opinion at pp. 9–10.

After a careful review of the record, we too find that the admission of testimony regarding the Klein incident was proper. The .25 caliber pistol pulled on Klein was determined to be one of the firearms stolen from Holland during the robbery only three days earlier. Thus, as the trial court found, the reference to the Klein case tended to establish the identity of Appellant as one of the men who had robbed Holland. Because "[e]vidence of a crime other than the one for which the defendant is being tried is admissible if it tends to show the identity of the perpetrator of the crime charged in the trial," and, because "this testimony was clearly relevant as showing part of a chain, or sequence of facts, or part of the history of the event on trial," we do not find that the trial court abused its discretion in admitting same. *Commonwealth v. Evans*, 332 Pa.Super. 301, 313, 481 A.2d 625, 631 (1984), *rev'd on other grounds*, 511 Pa. 214, 512 A.2d 626 (1985). *See also, Commonwealth v. Beckham*, 349 Pa.Super. 430, 433 n. 3, 503 A.2d 443, 445 n. 3 (1986) (in murder trial, evidence of previous, unrelated shooting held admissible to establish appellant's identity because ballistics evidence evinced that same gun was used in both shootings); *Commonwealth v. Nolen*, 330 Pa.Super. 366, 376, 479 A.2d 595, 600 (1984), *rev'd on other grounds, Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986) (in murder trial, evidence of unrelated burglary allegedly committed by appellant eight days before the within murder was relevant and probative and outweighed prejudice, where gun used in the murder was same gun stolen in the previous burglary).

■ Appellant next assigns error to the trial court for permitting Detective John Peterson to read from his report statements made to him by Holland during an interview regarding the incident in question. At trial, Holland "had been subject to extensive and vigorous cross-examination designed to cast doubt on his memory and general credibility." Trial court opinion at p. 10. Immediately following Holland's testimony, the Commonwealth called Detective Peterson to reiterate the description given to him, two days after the robbery, by Holland of his assailants and to read into the

record the serial numbers for the guns stolen from Holland. No objection was made to this testimony. On cross-examination, defense counsel attempted to show contradictions between the written summary taken by Detective Peterson and Holland's trial testimony. On redirect, Detective Peterson, over objection, read aloud his written summary of the statement given to him by Holland. Appellant contends that this statement was clearly hearsay and should not have been admissible at trial. Conversely, the Commonwealth contends, and the trial court found, that the statement was merely a prior consistent statement which was offered to rehabilitate Holland, whose credibility had been attacked by way of faulty memory. We agree.

It is well-established in this Commonwealth that prior consistent statements are hearsay when offered for the truth of their assertions. *Commonwealth v. Wood,* 417 Pa.Super. 264, 268–69, 612 A.2d 474, 476 (1992). "Such statements may be offered, however, to rehabilitate a witness whose credibility has been attacked with a charge of recent fabrication or faulty memory." *Wood,* 417 Pa.Super. at 269, 612 A.2d at 476. Here, defense counsel, by bringing out inconsistencies in the descriptions given by Holland at trial of his assailants, and of the descriptions given to Detective Peterson, clearly advanced the issue of Holland's credibility by inferring Holland had a faulty memory. Therefore, it was not error for the trial court to permit the Commonwealth to rebut the claim by introducing the written summation in its entirety. *See Commonwealth v. Fielder,* 417 Pa.Super. 455, 612 A.2d 1028 (1992) (witness' prior consistent statement to police officer, including portion concerning events leading up to and during crime, was admissible to bolster witness' credibility in response to defendant's attempted impeachment of witness using inconsistent portion of statement; prior consistent statement admissible even though defendant had cross-examined the witness and questioned police officer on direct examination only as to portion of statement concerning mode of transportation by which witness arrived at crime scene).

■ In the alternative, Appellant argues that, even if the statement were admissible as a "prior consistent statement", the court should have given a cautionary instruction to the jury as to the limited purpose of such testimony. We, however, will not reach the merits of this contention, as it has not been properly preserved for review. Appellant did not raise this argument in his post-verdict motions and/or in his statement of matters complained of on appeal, nor did the trial court address this argument in its opinion. *See Commonwealth v. Green,* 417 Pa.Super. 119, 122, 611 A.2d 1294, 1295 (1992) (issue not raised in post-trial motions and argued for first time on appeal was not preserved for appellate review). Accordingly, we find this issue waived.

■ Finally, Appellant, in a cursory argument, contends that defense counsel at trial was ineffective for failing to request the court to give a cautionary instruction with regard to Detective Peterson's recitation of Holland's statement to him. Appellant suggests that the jury should have been informed that the statement could be used only to assess credibility and not for its substantive content.

Claims of ineffectiveness of counsel are subject to a three-part analysis:

> First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his client's interest. Finally a showing must be made of how counsel's choice of action prejudiced the client. . . . The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant. [Citations omitted.]

*Commonwealth v. Nelson, supra,* 389 Pa.Super. at 423, 567 A.2d at 676. To prove prejudice from the ineffectiveness, Appellant must show that counsel's errors had an adverse effect on the outcome of the trial. *Commonwealth v. Boyles,* 407 Pa.Super. 343, 358, 595 A.2d 1180, 1188 (1991), *alloc. den.,* 531 Pa. 651, 613 A.2d 556 (1992). "An appellant must show that the error was 'so serious as to deprive [him or her] of a

fair trial, a trial whose result was reliable.'" *Boyles*, 407 Pa.Super. at 358, 595 A.2d at 1188 (*quoting Commonwealth v. Morocco*, 375 Pa.Super. 367, 371, 544 A.2d 965, 967 (1988), *alloc. den.*, 520 Pa. 615, 554 A.2d 508 (1989)). Furthermore, trial counsel cannot be found to have rendered ineffective assistance of counsel for failing to pursue a course of action that had no arguable merit. *Commonwealth v. Black*, 398 Pa.Super. 364, 366, 580 A.2d 1391, 1392 (1990), *alloc. den.*, 527 Pa. 628, 592 A.2d 1296 (1991). We shall address Appellant's claim of ineffectiveness pursuant to these standards.

The testimony challenged by Appellant is as follows:

A. [Detective Peterson on redirect] If Your Honor pleases. In summary, we read the following information. He stated that on Monday night, 11/30/87, at about 8:00 p.m., he stopped his vehicle at 58th and Master Streets near the center of the schoolyard to relieve himself. He said after he got out of his vehicle he raised his trunk of the vehicle and at this time he was rushed by three black males and he explained the trunk lid went down almost hitting his hand.

He went on to state that after they slammed down the trunk lid and the males reached and grabbed his wallet which was in his top, left, shirt pocket. And the heavt-set [sic] male grabbed two handguns he had in the trunk of his vehicle. When asked for his wallet, he said there was exactly two, 235 cards that he used for I.D., about $60.00 in cash.

When asked for a description of the handguns, he said one was an FIF Model DH7638, derringer serial no. PR1125, silver in color, two shots, brown, plastic grips.

He said the other handgun was a .25 caliber pistol, Model GT27, 2½" barrel, six-shot capacity, blue-steel finish, serial number MI79007, round, handgrips. No further description.

He said the Derringer cost him $85.00 and the .25 caliber pistol cost him $70.00.

Q. And then he goes on to state the way you read the paragraph the way you already read it to the jury; is that correct?

A. You're talking about the rings?

Q. Right. The questions that Mr. Waller [Defendant Freeman's trial counsel] asked you about, the rings; is that it?

A. Yes.

Q. And does that complete your report?

A. Yes, sir.

(N.T. at pp. 100–101). Even if we found that Appellant's claim had arguable merit and that counsel had no reasonable basis designed to effectuate Appellant's interest, in reviewing this testimony in conjunction with the testimony adduced from Holland and Detective Peterson on direct and cross-examination, Appellant has not demonstrated, nor does the record reflect, how he was prejudiced by the lack of a cautionary instruction. Holland and Detective Peterson had already testified to the information elicited on redirect. Thus, the summary recited by Detective Peterson was merely cumulative. Moreover, defense counsel for co-defendant Freeman opened the door by asking Detective Peterson to refer to, and read from, his report the number of assailants reported to have been involved in the incident, descriptions given to him by Holland of his assailants, which assailant was responsible for removing Holland's jewelry, and in what direction the assailants dispersed subsequent to the robbery. At no time was this testimony limited by Appellant's defense counsel, nor co-defendant Freeman's defense counsel, to only impeachment purposes. The defense essentially raised the issue of Holland's credibility, inferring Holland's memory was faulty. Thus, the trial court did not abuse its discretion in permitting the Commonwealth to dispel any such inference. *See Commonwealth v. Dreibelbis,* 493 Pa. 466, 479, 426 A.2d 1111, 1117 (1981) (when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inference). Accordingly, we cannot find trial counsel ineffective and Appellant's claim to the contrary is without merit.

Judgment of sentence affirmed.