595 A.2d 1180

**COMMONWEALTH of Pennsylvania**

**v.**

**Stephen M. BOYLES, Appellant.**

Superior Court of Pennsylvania.

Argued April 23, 1991.

Filed July 29, 1991.

Charles P. Wasovich, Altoona, for appellant.

Darlee E. Sill, Asst. Dist. Atty., Hollidaysburg, for the Com., appellee.

Before ROWLEY, President Judge, and CAVANAUGH and HESTER, JJ.

ROWLEY, President Judge.

Stephen M. Boyles appeals from the judgment of sentence entered September 6, 1990, in the Court of Common Pleas of Blair County. He raises the following issues in this appeal: (1) whether the guilty verdicts on the charges of involuntary deviate sexual intercourse and indecent assault are legally and logically inconsistent with the acquittal on the charge of rape; (2) whether the guilty verdicts were the product of free and voluntary deliberations by the jury; (3) whether the trial judge erred in refusing to permit appellant to present evidence of the victim's prior allegations of sexual assaults; (4) whether trial counsel was ineffective for failing to properly qualify three character witnesses; and (5) whether the trial judge erred in ordering appellant to pay restitution to the victim. After considering these issues, we affirm the judgment of sentence.

At approximately 9:00 a.m. on May 14, 1984, appellant, during the course of his employment as a cable installer, entered the residence of Michelle Civils and her boyfriend. Ms. Civils, her boyfriend, and her two year old son were present in the home. Appellant finished his work, and while he was completing the bill, he and Ms. Civils' boyfriend engaged in a conversation during which Ms. Civils' boyfriend told appellant that he had to be at work at 9:30 a.m. At approximately 9:25 a.m., appellant left Ms. Civils' home and her boyfriend went to work. Approximately fifteen minutes later, appellant returned to Ms. Civils' home and asked her if he could reenter her home to look for a screwdriver he had misplaced. Ms. Civils permitted appellant to enter her home, and while he looked around the house for his screwdriver, Ms. Civils fed her son who was

seated in a highchair. As Ms. Civils was feeding her son, appellant walked up behind her, grabbed her, and forced her to accompany him to the couch in the livingroom. He then forced her to engage in vaginal and oral intercourse with him.[1] After appellant left, Ms. Civils called her boyfriend who returned home and called the police.

On June 18, 1984, appellant was charged with rape,[2] involuntary deviate sexual intercourse (IDSI),[3] and indecent assault.[4] After a jury trial, over which the Honorable R. Bruce Brumbaugh presided, appellant was convicted on the charges of IDSI and indecent assault, but acquitted on the charge of rape. Trial counsel filed timely post-trial motions, but subsequently became ineligible to practice law in Pennsylvania. On October 31, 1986, appellant's present counsel entered his appearance.

After denying appellant's post-trial motions, the trial court[5] sentenced appellant. Appellant filed a motion to modify sentence on July 9, 1990. On August 1, 1990, the trial court vacated the sentence so that the Commonwealth could present evidence as to a proper amount of restitution. On September 6, 1990, appellant was resentenced. On the charge of IDSI, the trial court sentenced appellant to a term of imprisonment of two and one-half years less one day to five years less two days plus the costs of prosecution and a $500 fine. On the charge of indecent assault, the trial court sentenced appellant to a term of imprisonment of one to two years to run consecutive to the term imposed for the IDSI charge, the costs of prosecution, and a fine of $250. The trial court also ordered appellant to pay the following restitution to Ms. Civils: the sum of $220.49 for the cost of medication, the cost of a psychological evaluation not to

1. Appellant does not deny that the sexual activity occurred. However, he contends that Ms. Civils initiated, and consented to, the activity.

2. 18 Pa.C.S. § 3121.

3. 18 Pa.C.S. § 3123.

4. 18 Pa.C.S. § 3126.

5. On December 31, 1989, Judge Brumbaugh left office and this case was assigned to the Honorable Jolene Grubb Kopriva.

exceed $750, and $85 a week for thirty weeks for psychological counseling. After the trial court denied appellant's motion for reconsideration of sentence, he filed this timely appeal.

■ In his first issue, appellant contends that the verdicts of guilty on the charges of IDSI and indecent assault are legally and logically inconsistent with the verdict of not guilty on the charge of rape. Appellant concedes that Pennsylvania courts have held that "consistency in verdicts between the different counts of a criminal information is unnecessary." *Commonwealth v. Anderson,* 379 Pa.Super. 589, 593, 550 A.2d 807, 809 (1988) (*en banc*) (*citing Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932)); *See also Commonwealth v. Jackson,* 385 Pa.Super. 401, 411, 561 A.2d 335, 340 (1989), *aff'd on other grounds,* 526 Pa. 294, 585 A.2d 1001 (1991); *Commonwealth v. Trill,* 374 Pa.Super. 549, 559, 543 A.2d 1106, 1111 (1988), *allocatur denied,* 522 Pa. 603, 562 A.2d 826 (1989). However, he contends that the present case is distinguishable from past cases in which this principle has been applied. Appellant supports this argument by citing *Commonwealth v. Maxwell,* 280 Pa.Super. 235, 421 A.2d 699 (1980), in which the inconsistent verdicts were based on two sets of sexual acts which occurred at different times and different locations and the evidence concerning each occurrence was different, and *Commonwealth v. Williams,* 294 Pa.Super. 93, 439 A.2d 765 (1982), in which the defendant was convicted on charges of rape, involuntary deviate sexual intercourse and simple assault but acquitted on a charge of terroristic threats. The rule followed in these cases does not apply to the present case, appellant argues, because both appellant and the victim testified that the sexual acts occurred and the only issue which the jury had to decide was consent, or lack thereof. We do not agree with appellant that the distinction he urges is legally significant.

■ Appellant argues that "it is incomprehensible to conclude, as the jury did, that the deviate sexual act was the product of force or compulsion, and that the natural

sexual act was consented to." Appellant's Brief at 15. However, it is improper, as appellant has done, to draw specific conclusions from a general verdict. *Anderson, supra.* "[A]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence. When a general verdict is rendered, knowledge of the basis of the decision rests only with the jury itself." *Id.,* 379 Pa.Superior Ct. at 592, 550 A.2d at 807. Accordingly, we will not disturb the guilty verdicts on the basis of an apparent inconsistency as long as the evidence is sufficient to support the guilty verdicts. *Commonwealth v. Troy,* 381 Pa.Super. 326, 553 A.2d 992 (1989), *allocatur denied,* 525 Pa. 626, 578 A.2d 413 (1990); *Commonwealth v. Maute,* 336 Pa.Super. 394, 485 A.2d 1138 (1984). After considering all the evidence in the light most favorable to the Commonwealth, *Jackson, supra,* we conclude that the evidence was sufficient to sustain the guilty verdicts on the charges of IDSI and indecent assault.

In his next issue, appellant contends that the verdict was not the result of free and voluntary deliberations by the jury. After deliberating for approximately two and one-half hours, the jury sent a note to the trial judge which stated the following:

> We have discussed the issues until we can think of no more possible arguments. The vote was initially 7 to 5 to acquit and has not changed since. Jurors on both sides feel that the information is not sufficient to merit a change in this decision.

In response, the trial court gave the following instruction:

> In a large proportion of cases absolute certainty cannot be expected. Although a verdict must be the verdict of each individual juror and not mere acquiescence to fellow jurors, nonetheless, jurors should examine the question of guilty or innocent with candor, and with proper regard and deference to the opinions of each other. It is the duty of the Jury to decide the case, if they can conscientiously do so. The Jury should listen with a disposition to be convinced to each other's arguments. While undoubtedly the verdict of the jury should represent the

opinion of each individual juror, it by no means follow[s] that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views and by arguments among the jurors themselves.

It cannot be that each juror should go to the jury room with a blind determination that the verdict should represent her or his opinion of the case at that moment, or that she or he should close his or her ears to the argument of women and men who are equally as honest and intelligent as herself or himself.

Members of the Jury, with that instruction to you I return you to the Jury Room to continue your deliberations. The Jury will leave the Courtroom.

Notes of Testimony (N.T.) 10/31/84 at 328.

With regard to this instruction, appellant argues that the note from the jury clearly indicated that the jurors felt that they were hopelessly deadlocked, and the trial court made no attempt to assist them, but instead lectured them on their responsibilities as jurors and warned them that they must reach an unanimous verdict. We disagree. The note sent to the judge did not clearly indicate that the jurors were "hopelessly deadlocked." The jury had been deliberating for less than three hours. The trial court's decision to send the jurors back to the jury room to continue deliberations was well within its discretion. *See Commonwealth v. Sullivan,* 484 Pa. 130, 398 A.2d 978 (1979); *Commonwealth v. Smith,* 324 Pa.Super. 156, 471 A.2d 510 (1984).

■ Furthermore, the instruction given to the jury was not improper under the Pennsylvania Supreme Court's decision in *Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299 (1971). In *Spencer,* the Court held that the *Allen* [6] charge should not be employed by trial courts when they are instructing juries because it singles out dissenting ju-

6. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

rors and suggests that they yield to the majority view.[7] The charge given by the trial court in the present case did not single out jurors with a certain view; it merely "directed all jurors to consult with one another with a view to reaching an unanimous decision without doing violence to individual judgment." *Commonwealth v. Cook,* 383 Pa.Super. 615, 620, 557 A.2d 421, 424 (1989). The instruction given by the trial court was proper and in no way coercive.

■ Appellant raises an additional issue concerning an alleged trial court error during the deliberations. At approximately 1:00 a.m., the jury returned with a not guilty verdict on the rape charge, a guilty verdict on the IDSI charge, and a guilty verdict on the indecent assault charge. However, when the jurors were polled, one juror indicated that she did not really agree with the verdict on the IDSI charge. Therefore, the jurors returned to their deliberations as to that charge only, and two hours later returned with a unanimous guilty verdict. Appellant contends that the trial court erred in failing to further instruct the jury before sending them back to deliberate and in sending the minority juror back to deliberate as the "lone eagle", Appellant's Brief at 22, attempting to dissuade the other eleven. As discussed above, the trial court had already properly instructed the jury with regard to considering each other's views. Further instruction was unnecessary. *See Commonwealth v. Turner,* 390 Pa.Super. 216, 221, 568 A.2d 622, 624 (1989). For the above reasons, we conclude that the verdicts were the result of free and voluntary deliberations by the jury.

■ Appellant also argues that the trial court erred in refusing to permit appellant to present the testimony of Ms. Civils' ex-husband and his mother concerning Ms. Civils' prior allegations of sexual assaults. At trial, Judge Brumbaugh ruled that this testimony was not violative of the Rape Shield Law,[8] but that it was barred under the doctrine

---

7. It is interesting to note that, when this instruction was given, the majority of the jurors were voting to acquit.

8. 18 Pa.C.S. § 3104.

of spousal privilege. In her opinion, Judge Kopriva determined that this testimony was irrelevant and was also barred by the Rape Shield Law. We agree.

To be admissible, evidence must be competent and relevant. *Commonwealth v. Davis*, 381 Pa.Super. 483, 554 A.2d 104 (1989), *allocatur denied*, 524 Pa. 617, 571 A.2d 380 (1989). Evidence is relevant if it "logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact." *Id.*, 381 Pa.Superior Ct. at 491, 554 A.2d at 108.

We fail to see how the fact that Ms. Civils had reported two sexual assaults in the past is relevant to whether she consented to have intercourse with appellant. Appellant apparently wanted the jury to conclude that Ms. Civils had a propensity for making false allegations of sexual assaults, thus, the present allegation was also false. However, he presented no evidence that Ms. Civils' past allegations were in fact false. Moreover, he presented no evidence that Ms. Civils had made false allegations of sexual assaults after consenting to engage in intercourse with her alleged assailants. Under these circumstances, we conclude that the testimony was properly excluded as it was irrelevant.[9]

Furthermore, this evidence is inadmissible pursuant to Pennsylvania's Rape Shield Law which provides the following:

> (a) General rule.—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is

---

9. Although the trial court excluded this testimony on the grounds of spousal privilege, we can affirm a ruling of the trial court on a basis other than that relied upon by the trial court. *Commonwealth v. Toanone*, 381 Pa.Super. 336, 342, 553 A.2d 998, 1001 (1989).

at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S. § 3104(a). In *Commonwealth v. Johnson,* 389 Pa.Super. 184, 566 A.2d 1197 (1989), *allocatur granted,* 525 Pa. 643, 581 A.2d 569 (1990), an *en banc* panel of this Court held that "the Rape Shield Law is a bar to admission of testimony of prior sexual conduct involving a victim, whether it is consensual or the result of nonconsensual or assaultive behavior, unless it has probative value which is exculpatory to the defendant." *Id.,* 389 Pa.Superior Ct. at 195–96, 566 A.2d at 1202. Appellant contends that the testimony concerning Ms. Civils' past allegations of sexual assaults is exculpatory because it attacks her credibility and supports his assertion that the sexual activity was consensual. In support of this proposition, appellant cites *Commonwealth v. Black,* 337 Pa.Super. 548, 487 A.2d 396 (1985).

In *Black,* the defendant's daughter accused him of raping her. The defendant offered testimony concerning his daughter's consensual sexual relationship with her brother who had left home and separated from the family after violent arguments with the defendant. The defendant offered this evidence to show bias on the part of the daughter against him and a motive to seek retribution by false accusation. Under those circumstances, the Court held that the Rape Shield Law could not be used to exclude relevant evidence showing a victim's bias or attacking his or her credibility.

Although the court in *Black* stated that evidence attacking the victim's credibility could not be excluded under the Rape Shield Law, the attack on the victim's credibility in that case was based on the victim's possible bias against and hostility toward the defendant and her motive to fabricate. In later cases, this Court has applied the holding of *Black* only where the victim's credibility was allegedly affected by bias against or hostility toward the defendant, or the victim had a motive to seek retribution. *Compare Commonwealth v. Frank,* 395 Pa.Super. 412, 433, 577 A.2d 609, 620 (1990) *and Commonwealth v. Erie,* 361 Pa.Super.

44, 50–51, 521 A.2d 464, 467–69 (1987), *allocatur denied,* 517 Pa. 621, 538 A.2d 875 (1988) (following *Black* ) *with Commonwealth v. Reefer,* 393 Pa.Super. 193, 197, 573 A.2d 1153, 1154 (1990) *and Commonwealth v. Nenninger,* 359 Pa.Super. 444, 451–52, 519 A.2d 433, 437 (1986) *and Commonwealth v. Dear,* 342 Pa.Super. 191, 199–202, 492 A.2d 714, 719–20 (1985) *and Commonwealth v. Coia,* 342 Pa.Super. 358, 361, 492 A.2d 1159, 1161 (1985) (distinguishing *Black* ). Moreover, this Court has determined that, under § 3104(a) of the Rape Shield Law, testimony regarding the victim's claims of past sexual attacks is inadmissible. *See Troy, supra,* 381 Pa.Super. at 335–36, 553 A.2d at 997 (Rape victim's allegation of a previous rape is "not a proper focus on inquiry pursuant to 18 Pa.C.S.A. § 3104(a)." (footnote omitted)); *see also Coia, supra.*

In the present case, unlike *Black,* there was no evidence, other than the conduct that forms the basis of the charges filed in this case, that Ms. Civils was biased against or hostile toward appellant. In fact, she testified that she did not remember ever having seen appellant before this incident. N.T. 10/29/84 at 135, 149. In addition, although appellant ostensibly offered this evidence to attack Ms. Civils' credibility, he was primarily seeking to buttress his claim of consent. However, in *Black,* the Court explained that the holding "is not meant to limit the importance of the general principles embodied in the Rape Shield Law, particularly that evidence of sexual conduct with third persons is irrelevant to prove ... consent of the victim." *Black, supra,* 337 Pa.Super. at 558, 487 A.2d at 401. *See also Coia, supra,* 342 Pa.Super. at 362 n. 2, 492 A.2d at 1161 n. 2 ("Even if appellant had proceeded under a consent theory of defense, ... under *Commonwealth v. Black, supra,* evidence of sexual conduct with third persons is irrelevant to prove consent of the victim."); *Dear, supra,* 342 Pa.Super. at 202, 492 A.2d at 720 ("[Under]Dboth *Black* and the statute itself (18 Pa.C.S. § 3104)[,] ... evidence of sexual conduct with third persons is irrelevant to prove either consent or general moral defect of the victim." (footnote

omitted)). The holding of *Black* is applicable where the defendant alleges that the victim's credibility is questionable because of a bias against or hostility toward the defendant. However, where, as here, the defendant seeks to introduce evidence of the victim's past allegations of sexual assaults in order to prove consent of the victim, the evidence is inadmissible.

■ In his next issue, appellant contends that trial counsel was ineffective for failing to properly qualify potential character witnesses. In *Commonwealth v. Rollins*, 525 Pa. 335, 580 A.2d 744 (1990), the Supreme Court set forth the following standard for reviewing an ineffectiveness of counsel claim:

[W]e must first determine whether the issue underlying the claim is of arguable merit. If the claim lacks merit, our inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless or meritless issue. If, however, the claim has merit, we must then determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests. Finally, appellant must show that counsel's ineffectiveness so prejudiced his case that he was denied a fair trial.

*Id.*, 525 Pa. at 344, 580 A.2d at 748 (citations omitted). In addition, counsel is presumed to be effective and a defendant has the burden of proving otherwise. *Commonwealth v. Williams*, 524 Pa. 218, 230, 570 A.2d 75, 81 (1990).

■ It is well-settled that testimony as to the defendant's good character is substantive evidence and may be sufficient to create a reasonable doubt of guilt. *Commonwealth v. Neely*, 522 Pa. 236, 561 A.2d 1 (1989). Evidence of the defendant's good character is established by testimony of witnesses as to the reputation of the defendant in the general community. *Commonwealth v. Luther*, 317 Pa.Super. 41, 50, 463 A.2d 1073, 1078 (1983). In the present case, trial counsel initially planned to call six character witnesses to testify on behalf of appellant. He called only four to the stand. Of the four who actually testified, only the testimo-

ny of one was admitted into evidence for the following reasons. Trial counsel failed to question the first witness about appellant's reputation in the community. As to the second witness, trial counsel asked some proper questions but received nonresponsive answers. The testimony of the third character witness was received into evidence. Finally, the fourth character witness did not know appellant's reputation in the general community.

Appellant does not contend that counsel was ineffective for failing to call the two character witnesses who he initially planned to call but did not. Furthermore, although we find merit to appellant's argument "that defense counsel's lack of skill in framing appropriate questions, or his failure to prepare the witness[ ] contributed to the testimony of [the first witness] being stricken from the record," Trial Court Opinion at 19, we do not find merit to appellant's ineffectiveness claim as to the second and the fourth witnesses. Regarding the second witness, trial counsel did ask appropriate questions; however, the witness gave nonresponsive and inappropriate answers.[10] We will not deem counsel to be ineffective when a defense witness gives nonresponsive and unhelpful answers to proper questions.

Similarly, trial counsel again asked proper questions of the fourth witness concerning the witness' knowledge of appellant's reputation in the community. The witness, however, did not know appellant's reputation in the community. Granted, this witness was not a proper character witness and his testimony was stricken because of that fact. However, appellant has not argued that there were better character witnesses who trial counsel could have

10. In response to trial counsel's inquiry into appellant's reputation for honesty, the witness stated, "He's been honest whenever I've been concerned. I work in a small store and whenever he comes in there to buy stuff, he, you know, always pays for it." N.T. 10/31/84 at 270. Similarly, when trial counsel asked the witness about appellant's reputation for violence, the witness answered, "I've never seen Steven get violent." *Id.*

called.[11] Counsel will not be deemed ineffective merely because he called an unavailing witness. *See Commonwealth v. Colpo,* 367 Pa.Super. 223, 532 A.2d 870 (1987) (trial counsel was not ineffective for calling two character witnesses who did not know the defendant at the time of the incident for which he was on trial in light of the fact that trial counsel called other proper character witnesses). Therefore, we find merit to appellant's claim, but only as to the first character witness.

In addition, it is difficult to discern a reasonable basis for trial counsel's actions. It is possible, as the trial court noted, that the witness was not a proper character witness and that counsel called him to testify so that the jury could hear his favorable remarks concerning appellant even though the jury was later instructed to disregard those remarks. *See* Trial Court Opinion at 19. As discussed above, appellant has not argued that there were better character witnesses who trial counsel could have called. However, because it is unlikely that trial counsel's chosen strategy was to call a character witness who could not properly testify to appellant's reputation in the community, we will consider whether appellant was prejudiced by the striking of this testimony.

To prove prejudice in the context of an ineffectiveness claim, the defendant must show that counsel's error had an adverse effect on the outcome of the trial. *Commonwealth v. Ennis,* 394 Pa.Super. 1, 574 A.2d 1116 (1990). "An appellant must show that the error was 'so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable.' " *Commonwealth v. Morocco,* 375 Pa.Super. 367, 371, 544 A.2d 965, 967 (1988), *allocatur*

11. In order for trial counsel to be deemed ineffective for failing to call a certain witness, the defendant "must show that: (1) the witness was available; (2) that he informed counsel of the existence of the witness; (3) that the witness was prepared to cooperate and testify for the defense; and (4) that the witness's testimony was so essential to the defense that his or her absence caused an unfair verdict or sentence." *Commonwealth v. Woods,* 394 Pa.Super. 223, 230, 575 A.2d 601, 605 (1990) (citations omitted).

*denied,* 520 Pa. 615, 554 A.2d 508 (1989) (*quoting Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). In the present case, the jury heard the testimony of one of the witnesses as to appellant's good character and reputation in the community. Furthermore, although the testimony of the first witness was stricken, the jury heard the witness testify about his favorable opinion of appellant. The jury also heard the other two witnesses testify about their favorable opinions of appellant although that testimony was not proper character testimony. Accordingly, we conclude that appellant was not deprived of a fair trial because the testimony of one character witness was stricken due to trial counsel's inability to qualify him, and appellant has not met his burden of proving ineffectiveness of counsel.

 Finally, appellant contends that the sentencing judge erred in ordering appellant to pay restitution to Ms. Civils in the amount of $3,524.49 for medication,[12] and psychological evaluation and counseling. "[R]estitution is within the discretion of the sentencing court but must be supported by the record, and the court must determine the loss or damages resulting from the defendant's conduct, the amount of compensation the defendant can afford to pay and how such amount shall be paid." *Commonwealth v. McLaughlin,* 393 Pa.Super. 277, 392, 574 A.2d 610, 617 (1990). Although restitution is aid to the victim of a crime, its primary purpose is to rehabilitate the defendant, *Commonwealth v. Cannon,* 387 Pa.Super. 12, 563 A.2d 918 (1989), *allocatur denied,* 525 Pa. 597, 575 A.2d 564 (1990), and "to impress upon the defendant that his or her criminal conduct caused the victim's loss or personal injury and that it is his or her responsibility to repair the loss or injury as far as possible." *Commonwealth v. Anderson,* 394 Pa.Super. 299, 300, 575 A.2d 639, 639 (1990).

First of all, appellant contends that the trial court erred in ordering restitution because the testimony elicited at the

---

12. Appellant does not challenge the $220.49 which Ms. Civils paid for medication after the assault.

restitution hearing established only an approximation of the cost of treatment. We disagree. At the restitution hearing, Dr. JoAnn Hunter–Farr, a licensed clinical psychologist who will be treating Ms. Civils, testified that Ms. Civils will need a complete psychological evaluation. Restitution Hearing Transcript 9/6/90 (R.H.Tr.) at 8. Dr. Hunter–Farr could not state the exact cost of this evaluation, but she did state that it would not exceed $750. *Id.* at 10. In the restitution order the trial court directed appellant to pay for this evaluation in the sum of no more than $750. We find the trial court's order an appropriate way to impose upon appellant the obligation to pay for this evaluation when the exact cost of the evaluation is not known.

In addition, Dr. Hunter–Farr testified that Ms. Civils would need at least one year of therapy with at least one session per week, and that each session costs $85. *Id.* The trial court ordered appellant to pay $85 a week for thirty weeks. This Court has held that restitution can be imposed for emotional and mental disturbances as well as for physical harm. *Commonwealth v. Balisteri*, 329 Pa.Super. 148, 478 A.2d 5 (1984). However, the extent of the psychological counseling needed to treat these emotional and mental disturbances cannot be measured precisely. Nonetheless, treatment for the emotional and mental harm which Ms. Civils has suffered is as important as the medication used to treat the physical harm which she suffered. We do not believe that appellant should be exempted from paying restitution merely because the exact duration or extent of the treatment is impossible to foresee. The trial court recognized this dilemma and fashioned an appropriate order. We find no error.

 Appellant also contends that the restitution order is not consistent with his ability to pay. Although an award of restitution should not be excessive, *McLaughlin, supra,* "[t]he true 'rehabilitative goal [of restitution] is defeated only when the payments ordered by the court are so unreasonable in view of the defendant's financial circumstances and ability to work that despite good faith efforts, the

defendant cannot hope to comply.'" *Commonwealth v. Valent,* 317 Pa.Super. 145, 149–50, 463 A.2d 1127, 1129 (1983) *(quoting Commonwealth v. Wood,* 300 Pa.Super. 463, 468, 446 A.2d 948, 950 (1982)).

██ According to the income and expense statement submitted by appellant and his wife, which is included in the certified record, their household expenses total approximately $1150 a month. Appellant will be serving his sentence at a county prison and will be permitted to participate in the Work Release Program. At the restitution hearing, he testified that was earning approximately $1000 a month. R.H.Tr. at 25. In addition, he testified that his wife contributes to the household income and earns approximately $700 a month. *Id.* at 25–26. While the payment of restitution may be a hardship for appellant, the fact that a defendant may have to make substantial sacrifices is not an obstacle to a restitution order. *Wood, supra.* In addition, an order of restitution need not be in an amount which can be paid from a defendant's current earnings. *Commonwealth v. Madron,* 339 Pa.Super. 105, 488 A.2d 331 (1985). Furthermore, appellant does not have to pay for Ms. Civils' counseling indefinitely; appellant only has to pay for thirty weeks. After reviewing the record, we conclude that the trial court was aware of the pertinent financial information when it imposed the order, and that the order is not excessive or beyond appellant's ability to pay.

██ Finally, appellant argues that there is no evidence that a causal connection exists between Ms. Civils' emotional problems and appellant's actions. He emphasizes the testimony of Deborah Ann Hockenberry, a volunteer counselor with the Sexual Assault Volunteer Program who worked with Ms. Civils for two years prior to the restitution hearing. Specifically, Ms. Hockenberry testified that "I'm aware that there were other problems with Michele [sic] before." R.H.Tr. at 14. While it is true that the defendant's actions must cause the injury in order for restitution to be proper, *see McLaughlin, supra,* we are in agreement with the following statements made by the trial court:

[When] a victim ... is sexually abused, if they are not of a stable mind to begin with then the restitution pays for at least a portion of the psychological counseling that will be necessary to overcome the exaggeration or the exacerbation of the already existing problem.

If that weren't true, anybody who becomes a victim that already had problems would never be entitled to restitution. And that shouldn't be the case. A defendant should not not have to pay restitution because the person that they chose to victimize had some other problems.

... Now that doesn't mean that you would be forever involved in paying until they're well but certainly that you contribute to the psychological counseling that's necessary.

R.H.Tr. at 34–35.

Ms. Civils was the victim of a sexual assault perpetrated by appellant. Although she may have emotional problems stemming from other sources, she did not seek treatment until after the assault by appellant. In fact, Ms. Hockenberry testified that this assault has caused Ms. Civils to experience a great deal of trauma. *Id.* at 14. It is a reasonable conclusion that at least part of Ms. Civils' emotional problems were caused by that assault. Dr. Hunter-Farr testified that Ms. Civils will need at least one session of therapy a week for at least a year. The trial court ordered appellant to pay for one session a week for thirty weeks. This is a reasonable and fair appropriation and we find no error.

Judgment of sentence affirmed.