437 Pa. Superior Ct. 14 (1994)
648 A.2d 1205
COMMONWEALTH of Pennsylvania
v.
Demetris SCALES, Appellant.
Superior Court of Pennsylvania.
Submitted January 3, 1994.
Filed October 13, 1994.
*16 Barnaby Wittels, Philadelphia, for appellant.
Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.
Before CAVANAUGH, TAMILIA and MONTGOMERY, JJ.
TAMILIA, Judge.
This case was tried in a bench trial before the Honorable Lisa A. Richette on charges of murder,[1] voluntary manslaughter,[2] involuntary manslaughter,[3] simple assault[4] and aggravated assault,[5] reckless endangerment[6] and failure to stop, identify and render aid,[7] arising out of a homicide by vehicle on June 30, 1992, in the death of Jeremiah Cobb, age five, and injury to Terrell Dekeyser, also five years of age. After a number of preliminary and pretrial proceedings, on February 24, 1993, the defendant, who was free on bail, entered a plea of not guilty as to all charges and proceeded to trial before Judge Richette.
Following trial, appellant was adjudicated guilty of third degree murder, simple assault, reckless endangerment and failure to stop and identify. After exhausting his post-trial remedies, the trial court sentenced appellant to four (4) to ten (10) years' imprisonment for third degree murder and three *17 (3) to six (6) months for reckless endangerment and three (3) to six (6) months for simple assault, with the sentences to run consecutively. The sentence for violation of the Motor Vehicle Code was suspended.
The sole issue presented by appellant for review by this Court is whether the evidence was sufficient to establish the elements required to convict for third degree murder. Appellant interjects the weight of the evidence issue in the sufficiency of the evidence question.
As to the weight of the evidence claim, the Supreme Court has held that the weight of evidence given to particular facts at trial is largely within the discretion of the trier of fact, in this case the trial judge, and short of total distortion of the facts as determined by the trial court or ignoring a critical fact, the appellate court may not disturb the findings nor substitute its judgment for that of the trial court. See Commonwealth v. Nelson, 514 Pa. 262, 523 A.2d 728 (1987); Commonwealth v. Wallace, 522 Pa. 297, 561 A.2d 719 (1989). Because of dicta in the above cases there was some question as to whether this Court had the right to entertain a challenge to the weight of the evidence. However, in Commonwealth v. Murray, 408 Pa.Super. 435, 597 A.2d 111 (1991) (en banc), this Court held that such a challenge was reviewable. Nevertheless, our review of the evidence clearly supports the trial court's ruling on the weight of the evidence. This leaves only the issue of whether the evidence was sufficient to sustain a finding of third degree murder. We believe it does.
When reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and granting the Commonwealth all reasonable inferences deducible therefrom, the evidence is sufficient to establish all the elements of the offenses beyond a reasonable doubt. Commonwealth v. MacArthur, 427 Pa.Super. 409, 629 A.2d 166 (1993); Commonwealth v. Hilfiger, 419 Pa.Super. 450, 615 A.2d 452 (1992). Malice is the crucial element in question in this review as it is the element which distinguishes *18 murder from other types of homicide. Commonwealth v. White, 366 Pa.Super. 538, 531 A.2d 806 (1987). Specifically, malice is the distinguishing factor between murder and manslaughter. Commonwealth v. Seibert, 424 Pa.Super. 242, 622 A.2d 361 (1993). Under the Crimes Code, the offense of third degree murder incorporates common law malice as an element. 18 Pa.C.S. §§ 2501, 2502(c). That section adheres to the traditional definitions of malice set forth in Commonwealth v. Drum, 58 Pa. 9 (1868):
Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.
Malice necessary to support a murder conviction may also exist where a reasonable principal acts in gross deviation from a standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury. Stidham v. Millvale Sportsmen's Club, 421 Pa.Super. 548, 618 A.2d 945 (1992).
A finding of malice based on a "recklessness of consequences" requires that a defendant be found to have consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. See Commonwealth v. Fierst, 423 Pa.Super. 232, 245, 620 A.2d 1196, 1203 (1993). The Commonwealth, in support of its position that the evidence established that appellant acted with malice, points to Commonwealth v. Urbanski, 426 Pa.Super. 505, 627 A.2d 789 (1993) and Commonwealth v. Pigg, 391 Pa.Super. 418, 571 A.2d 438 (1990).
The crucial facts immediately prior to the fatal consequences of appellant's reckless behavior are found by the trial court in the testimony of the investigating officer, Robert Byrne. The testimony of Officer Byrne, that the failure of *19 appellant to brake as he scraped a vehicle and then swerved onto the sidewalk striking a concrete planter and then the children produced the fatal result, spanned 33 pages in the trial transcript (T.T., 2/24/93, pp. 25-58). At the estimated speed of the vehicle, 26 miles per hour, the expert testified it would have taken 30 feet to stop. The fatalities would not have occurred if appellant had simply applied the brakes. Instead, when the Cadillac in front of him at the intersection came to a screeching halt, appellant swerved until he was entirely on the sidewalk, apparently never braking, and continuing on his way after striking the children (T.T. at 63-64). Other witnesses testified as to the wanton recklessness and disregard of social consequences to bring the facts of this case within the requirements for third degree murder.
Witness Jean Hargrove saw him speeding one-half block away and "told him to slow down" and "he said, shut up" (T.T. at 68). "He was going fast. Like on the expressway" (T.T. at 68). He then swerved onto Susquehanna and Woodstock without stopping and drove over the curb at 2200 Woodstock.
Teresa Thompson testified she was attempting to cross the street at 2100 Woodstock when appellant approached from the 2000 block of Woodstock traveling 60 miles per hour. "My daughter Jean hollered to him, hey, slow down. He did not slow down" (T.T. at 72).
The witness testified there were about 10 children playing in the block and the court took judicial notice of the fact that in warm weather many children play in the street (T.T. at 70). Richardson Burgess testified he was sitting at 2222 Woodstock when appellant's car hit his car, swerved between a barrier pole and telephone pole onto the sidewalk traveling 50 to 55 miles per hour. He reflected [sic] off a house, hit the sidewalk and steps and kept going  he kept accelerating. He never intended to stop  he showed no signs of stopping (T.T. at 77-78).
Jeanette Rosario testified the appellant's car came speeding down the block, came over the curb on two wheels, struck the children and, despite her pleas to stop, continued on. She *20 testified he was going more than 25 miles per hour  "real fast  about 60." (T.T. at 84-85.)
Motor vehicle cases, where our appellate courts have sustained malice/murder convictions, all contain the element of sustained recklessness by the actor in the face of perceptible risk of harm to another person or persons who became victims. The facts derived from the testimony above detail precisely the type of behavior before, during and after the event which must be judged to have been done with a conscious disregard of an unjustified and extremely high risk that appellant's actions might cause death or serious bodily injury.
Here, appellant was driving an older, heavy and high-powered vehicle, at a high rate of speed in a crowded residential neighborhood, and at a time when children play in the streets and on sidewalks in large numbers. He ignored a stop sign, almost colliding with a vehicle in the intersection. He was told to slow down and responded with "shut up." After traversing the intersection, apparently without slowing down or braking, he sideswiped another car and swerved onto the curb where he ran into a cement flower container and the children, and without attempting to stop, continued up the street despite calls from bystanders to stop. At no time did it appear appellant was merely reckless, but rather he drove his car as though it were a guided missile which predictably would result in loss of life or serious injury to innocent persons, such as occurred here. The result was just as predictable as if appellant had pointed and fired a gun down the crowded street with people in the line of fire. While the victims could not be foretold with certainty, the likelihood that someone would be injured or killed was highly predictable and certain. This is not a case where it can be said the appellant unintentionally caused the death of another person while violating the law. Malice can be inferred by his refusing to slow down when called upon to do so, shouting "shut up" to the citizen, running a stop sign endangering another motorist in the intersection, sideswiping a car and, with no evidence of braking and some evidence of steering onto the sidewalk between telephone poles and sidewalk guards, continuing on after striking the *21 children, disregarding calls to stop and then fleeing from the scene further up the street when the car stalled. This is not merely homicide by vehicle where an unintentional death is caused by a relatively benign violation of the Motor Vehicle Code or other statute or municipal ordinance. This surpasses the recklessness described as a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. Malice may be implied from the sustained disregard for the lives and safety of people and vehicles in the path of appellant's vehicle, despite calls to desist and refusing to avail himself of the opportunity to avoid the ultimate harm, loss of the life of the child, simply by applying his brakes when his car swerved or was guided onto the sidewalk. Urbanski and Pigg, supra, cited by the Commonwealth, clearly support the finding of malice based on the facts of this case. The Urbanski Court stated:
Appellant also claims that there was insufficient evidence of malice to support a conviction for third degree murder. Malice, defined as a recklessness of consequences, a mind regardless of social duty, an unjustified disregard for the probability of death or great bodily harm or an extreme indifference to the value of human life, see Commonwealth v. Carroll, 412 Pa. 525, 531, 194 A.2d 911 (1963), can be established by a high blood alcohol content, the absence of weather or road conditions that would explain an accident and an awareness of potential danger. See Commonwealth v. Taylor, 461 Pa. 557, 337 A.2d 545, 548 (1975). Further, a finding of malice is supported where an accused drives recklessly immediately prior to the accident and ignores the request of another to stop driving. Commonwealth v. Pigg, 391 Pa.Super. 418, 571 A.2d 438, 442, alloc. denied, 525 Pa. 644, 581 A.2d 571 (1990).
Id. 426 Pa.Super. at 513, 627 A.2d at 793 (emphasis added).
Death by motor vehicle is probably the leading cause of traumatic death in this country. According to the National Highway Traffic Safety Administration over 40,000 persons were killed in traffic fatalities in 1991. In recent years, despite substantial increased numbers of drivers, there has *22 been a steady decline in motor vehicle deaths and injuries because of vigorous enforcement of drunk driving and speeding laws. With augmented penalties for controllable behavior such as drunk driving and speeding, society has responded by heightened self-policing of the prohibited behavior. The law has also distinguished the unintentional vehicular homicide resulting from simple negligence and homicide while violating a law but still unintentional. We must make a further distinction between the unintentional vehicular homicides and homicides due to reckless behavior from those as here, where behavior is so focused and deviant that the wantonness of it calls upon a reasonable trier of fact to find malice to be implied. Paradoxically, despite the recent improvement of reasonable persons in controlling antecedent behavior such as drinking, to avoid vehicular accidents and homicides, there is a substantial increase in motor vehicle crimes such as car snatching, car theft and fleeing from the police or using the vehicle in the commission of crimes such as drive-by shootings and robberies. When the actor so far crosses the line of reasonableness, concern for the safety of others and refuses to heed cautionary calls to desist, malice must be implied. Any person who attempts to emulate the driving patterns exhibited in any of the "French Connection," "Smokey and the Bandit" or "Beverly Hills Cops" films on city streets crowded with children and others, the predictable victims of the irrational behavior, cannot escape having malice implied to his actions. Motor vehicles still outdistance firearms as the most dangerous instrumentality in the hands of irresponsible persons in our society today.
Judgment of sentence affirmed.
CAVANAUGH, J., dissents.
CAVANAUGH, Judge, dissenting.
Demetris Scales appeals from the judgment of sentence of four and one half to eleven years imposed following his convictions for third degree murder,[1] simple assault,[2] recklessly *23 endangering another person ("REAP")[3] and failure to stop and identify.[4] The sole issue raised on appeal is whether the evidence was sufficient to establish the malice necessary to sustain a conviction of third degree murder. Because I do not agree with the majority that the evidence was sufficient to establish that appellant acted with malice, I respectfully dissent.[5]
The facts are, indeed, appalling. In the early evening of June 30, 1992, appellant, a twenty-two year old unlicensed driver, was operating a borrowed 1972 Chrysler, at a high rate of speed, in the 2100 block of North Woodstock Street in Philadelphia. North Woodstock is a one way, residential street and is between 22 and 26 feet wide. Nevertheless, there was evidence that while appellant was speeding down Woodstock, a bystander shouted for him to "slow down," to which he responded, "shut up" and continued on without reducing his speed. As appellant approached the intersection of Woodstock and Susquehanna Avenue, he passed a stop sign and sped into the intersection, where he was forced to swerve to avoid hitting a Cadillac which was travelling west on Susquehanna. Emerging from the intersection and into the 2200 block of North Woodstock, appellant was headed directly for a parked car. In an effort to avoid this car, he turned sharply in the opposite direction.[6] Despite this maneuver, appellant's vehicle glanced off the parked car; the left wheels *24 of his car became airborne, he traversed the street and went up onto the sidewalk. Appellant's out-of-control vehicle continued down the sidewalk, knocking down a railing in front of one house and then colliding with a large concrete planter. This collision pushed the planter into five-year old Jeremiah Cobb and five-year old Tirrel Dekeyser, who were playing on the sidewalk. Cobb was crushed to death between the planter and a set of steps. Dekeyser suffered leg injuries. Appellant then drove the car back onto Woodstock Street and fled the scene. The next day he turned himself into police.
Following a non-jury trial before the Honorable Lisa A. Richette, appellant was adjudicated guilty of third degree murder, simple assault, REAP and failure to stop and identify.[7] Post-trial motions were filed by appellant and denied by the trial court. Appellant was sentenced to four to ten years on the murder conviction, three to six months each for simple assault and REAP and the sentence for failure to stop and identify was suspended; all of the sentences imposed were to run consecutively for an aggregate term of four and one-half to eleven years. This appeal followed.
When reviewing a challenge to the sufficiency of the evidence, [this court] must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and granting the Commonwealth all reasonable inferences deducible therefrom, the evidence is sufficient to establish all the elements of the offenses beyond a reasonable doubt.
Commonwealth v. MacArthur, 427 Pa.Super. 409, 412, 629 A.2d 166, 167 (1993) (citation omitted).
With respect to a charge of third degree murder, the Commonwealth is not required to prove a specific intent to kill. Commonwealth v. Frederick, 327 Pa.Super. 199, 211, 475 A.2d 754, 761 (1984). Malice is the essential element or *25 gravamen of third degree murder and is the distinguishing factor between murder and manslaughter. Commonwealth v. Smouse, 406 Pa.Super. 369, 379, 594 A.2d 666, 671 (1991). Legal malice exists where there is particular ill-will, or where there is wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. Commonwealth v. Austin, 394 Pa.Super. 146, 153, 575 A.2d 141, 145 (1990). Where malice is based on recklessness of consequences, it must be shown that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury; mere recklessness, as codified at 18 Pa.C.S.A. § 302(b)(3),[8] is not sufficient to establish the requisite malice for third degree murder. Commonwealth v. Fierst, 423 Pa.Super. 232, 245, 620 A.2d 1196, 1203 (1993).
Here, both the majority and the trial court have concluded that the evidence adduced at trial unquestionably supported the inference that appellant acted with malice. I cannot agree. Although appellant's conduct was reckless, it was not the type of conduct which, under the framework of Pennsylvania statutory and caselaw, is sufficient to permit a finding of malice which would sustain a conviction of third degree murder. See Commonwealth v. Miller, 426 Pa.Super. 410, 627 A.2d 741 (1993) (where defendant's two infant daughters died from malnutrition and dehydration, as a result of defendant's failure to provide nourishment and care, defendant's reckless conduct rose to the level of malice, and thus, supported conviction for third degree murder); Commonwealth v. Seibert, 424 Pa.Super. 242, 622 A.2d 361 (1993) (where defendant placed gun against victim's head, not knowing whether it was *26 loaded, and pulled the trigger, defendant's reckless conduct constituted malice which would sustain a conviction for third degree murder, even though defendant and victim were friends and there was no animosity between them on the date of the homicide); Commonwealth v. Cottam, 420 Pa.Super. 311, 616 A.2d 988 (1992) (defendants' conscious disregard of an unjustified and extremely high risk that their actions might cause serious bodily injury to their son, constituted the malice necessary to support a third degree murder conviction, where defendants' knew their son was near death, they failed to seek aid on his behalf and son subsequently died from starvation and malnutrition); Commonwealth v. Wanamaker, 298 Pa.Super. 283, 444 A.2d 1176 (1982) (defendant's conduct in directing his brother to bring him a loaded rifle and then firing rifle in direction of another person, constituted a conscious disregard of an unjustified and extremely high risk that his actions might cause death or serious bodily injury and thus, amounted to such malice as to constitute conspiracy to commit third degree murder); Commonwealth v. Young, 494 Pa. 224, 431 A.2d 230 (1981) (where defendant points a gun at his victim and shoots him, even though he claims he did not know the gun was loaded and that he only intended to scare the victim, his conduct nevertheless amounts to a conscious disregard of an unjustified and extremely high risk that his actions might cause death or serious bodily injury, and thus, constitutes malice which will sustain a conviction for third degree murder); Commonwealth v. Coleman, 455 Pa. 508, 318 A.2d 716 (1974) (defendant's act of waiving loaded gun inside a bus, firing gun at seat and killing passenger who was hiding behind seat, constituted malice necessary to sustain a conviction of second degree murder).[9]
These cases illustrate the type of egregious conduct which a defendant must exhibit before he will be adjudged guilty of third degree murder. As noted, a finding of malice based on a "recklessness of consequences" requires that a defendant be found to have "consciously disregarded an unjustified and *27 extremely high risk that his actions might cause death or serious bodily injury." See Fierst, supra. The above cases suggest that this definition requires that, in order to find malice, a defendant must display a disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; or his conduct must, at the very least, be of the type from which one could reasonably anticipate that death or serious bodily injury would be the likely and logical consequence. In each case the actor can fairly be charged with acting recklessly with a known risk to another person or persons. In light of the above third degree murder cases and the facts of this case, I cannot conclude that appellant's conduct, although reckless, was of such a degree that it was tantamount to an actual desire to injure or kill; or that it was the type from which one could reasonably anticipate the likely and logical consequence to be the death of one five year old and the serious injury of another. Rather, appellant's conduct is much more aptly described as a gross deviation from the standard of conduct that a reasonable person would observe in his position; in other words, appellant acted recklessly. See note 8, supra. As such, I cannot agree with the majority that the evidence offered at trial was sufficient to support a finding that appellant acted with malice, and thus, sustain his conviction for third degree murder. Motor vehicle cases, where our appellate courts have sustained malice/murder convictions, all contain the element of sustained recklessness by the actor in the face of perceptible risk of harm to another person or persons who became the victim(s). In the instant case, the ultimate harm occurred after the vehicle careened out-of-control after appellant's antecedent recklessness.[10] *28
*29 Although my analysis is complete for dispositional purposes, I believe that further comment is warranted in view of the trial court's adjudication of appellant as guilty, on the facts present in this case, of an offense as serious as third degree murder. As this court noted in Pigg, supra: "[I]t is rare for a death caused by vehicular incident to give rise to a conviction of third degree murder." Id. 391 Pa.Super. at 426, 571 A.2d at 441. I fully agree, and believe that the homicide by vehicle statute[11] was meant to fill the gap, in the crimes and vehicle codes, which was created by the type of outrageous and culpable vehicular killings which the present case typifies. This belief is supported by our supreme court's comment in Commonwealth v. Field, 490 Pa. 519, 417 A.2d 160 (1980), where the court stated: "In our view it was the legislative judgment in enacting section 3732 [homicide by vehicle] to expand the scope of criminal liability for violations of the Vehicle Code causing death." Id. 490 Pa. at 525 n. 4, 417 A.2d at 163 n. 4.
Third degree murder and homicide by vehicle are two very different crimes which require proof of different levels of culpability, protect different interests and provide different criminal penalties. As previously noted, third degree murder requires proof that the defendant acted with malice. See Smouse, supra. Homicide by vehicle, on the other hand, also requires criminally culpable conduct, but of a lesser degree; a conviction of homicide by vehicle will be upheld where a defendant acted recklessly or was criminally negligent. Commonwealth v. Heck, 517 Pa. 192, 200-01, 535 A.2d 575, 579-80 (1987).
The respective sentencing schemes for third degree murder and homicide by vehicle also bear out the fact that they are *30 substantially different crimes. Third degree murder is a felony of the first degree, with a standard range minimum sentence of sixty to one hundred and twenty months. It carries a maximum penalty of twenty years imprisonment.[12] Homicide by vehicle, on the other hand, is a first degree misdemeanor with a standard range minimum sentence of zero to twelve months.[13] It carries a maximum penalty of five years imprisonment.[14]
The disparity between the crimes of third degree murder and homicide by vehicle only serve to underscore the fact that fatalities resulting from vehicular incidents should only rarely be classified as malicious in nature. Rather, the type of conduct present in the case at bar, fits more readily into the reckless and criminally negligent type of behavior which is covered by the homicide by vehicle statute. As such, I believe that the homicide by vehicle statute provides the appropriate criminal sanction in this case and cases which are factually similar.[15]
I also highlight the inconsistency of the trial court's verdict of guilty of third degree murder but not guilty of homicide by *31 vehicle and involuntary manslaughter.[16] Although I am fully cognizant that a judge may render inconsistent verdicts,[17] and that a verdict of guilt will not be disturbed on the basis of an apparent inconsistency so long as there is sufficient evidence to support it,[18] I am nonetheless perplexed by the inconsistency in these verdicts. Notwithstanding the fact that I believe the evidence insufficient to support a finding of guilt of third degree murder, the evidence adduced at trial would seem to overwhelmingly support a finding of guilt of both homicide by vehicle and involuntary manslaughter.
Specifically, with respect to a prosecution for homicide by vehicle, the Commonwealth is required to prove that: (1) appellant drove in a manner that violated the Motor Vehicle Code; (2) appellant knew or should have known that his conduct violated the law; and (3) the death was the probable result of the Motor Vehicle Code violation. Commonwealth v. Bowser, 425 Pa.Super. 24, 31-32, 624 A.2d 125, 129 (1993). Additionally, the Commonwealth must show that appellant acted recklessly or was criminally negligent. See Heck, supra. In its opinion, the trial court stated, "The defendant willfully drove through a stop sign. This act caused him to swerve around a car that was lawfully proceeding through the intersection and began the sequence of events that caused him to lose control of his car. The defendant could have avoided this catastrophe by stopping at the stop sign, but he did not." Despite this conclusion, the trial court adjudicated appellant not guilty of homicide by vehicle.[19]
*32 Finally, I note with approval the cogent and well-reasoned concurring opinion of the Honorable John G. Brosky in Urbanski, supra. Although that case involved a conviction for third degree murder where the defendant had been driving while intoxicated, much of Judge Brosky's reasoning applies equally as well in the case of a vehicular homicide where there is no alcohol in the driver's system. Judge Brosky stated, in pertinent part:
I do not favor the practice of "squeezing" criminal conduct to fit into definitions of crimes for which it was unlikely meant. Murder, of any degree, is among the most egregious and serious offenses found in our crimes code, and, as the name of that offense suggests, ordinarily encompasses either intent to kill or malicious design. The word "malice" generally connotes evil disposition and a desire to injure or harm, something greater than carelessness or recklessness. . . .
This is not to say that such conduct should go unpunished, the conduct of appellant is clearly criminal under our law, and should be punished according to law. However, there are crimes delineated in the vehicle code and crimes code which more properly encompasses the conduct which took place in the present case. . . .
It seems to me that to find the evidence presented here sufficient for a third degree murder conviction, particularly under the rationale provided, is to negate the need for the crime of homicide by motor vehicle . . . altogether. Any incident which would satisfy those elements would appear to also satisfy those required for third degree murder, or involuntary manslaughter. Since it is contrary to the rules of statutory construction to presume that the legislature is creating a wholly superfluous crime, I believe that third degree murder in a vehicular context requires a showing of malice . . . defined as an actual desire to injure or kill or *33 cause suffering to another or conduct that suggests a disregard for almost certain death or injury such that it is tantamount to the same. I do not think the evidence here established such malice.
Urbanski, supra, at 515-19, 627 A.2d at 794-96 (Brosky, J., concurring).
Because I believe that the evidence presented at trial was insufficient to establish the requisite malice to sustain a verdict of guilty of third degree murder, I would reverse the trial court's judgment of sentence of four to ten years on the murder conviction. This is not to say that a defendant who causes the death of another in a vehicular incident can never be found guilty of third degree murder. Where a defendant's conduct rises to the level of malice, as illustrated by the third degree murder cases cited supra, a conviction for third degree murder may be the appropriate criminal sanction.[20] The conduct in this case, however, does not rise to that level of culpability. Malice, both in general and in a vehicular context, requires the disregard of a much more substantial risk and a greater certainty of death or injury than was present in this case. Accordingly, I would reverse the trial court's judgment of sentence on appellant's conviction of third degree murder.
NOTES
[1] 18 Pa.C.S. § 2502.
[2] Id., § 2503.
[3] Id., § 2504.
[4] Id., § 2701.
[5] Id., § 2702.
[6] Id., § 2705.
[7] Id., 75 Pa.C.S. § 3742.
[1] 18 Pa.C.S.A. § 2502(c).
[2] 18 Pa.C.S.A. § 2701.
[3] 18 Pa.C.S.A. § 2705.
[4] 75 Pa.C.S.A. § 3742.
[5] Appellant has framed his sole issue on appeal in terms of a challenge to the sufficiency of the evidence. His argument, however, intermixes the distinct legal concepts of sufficiency of the evidence and weight of the evidence. In these circumstances, this court would normally address both issues. However, because I believe appellant is entitled to relief on his sufficiency claim, a review of his challenge to the weight of the evidence is unnecessary.
[6] At trial, it was established through both Commonwealth and defense experts, that appellant was travelling at approximately 26 miles per hour at this point. The Commonwealth's expert also testified that, despite a lack of physical evidence, it was his opinion that appellant did not apply his vehicle's brakes at this point or at any point thereafter.
[7] The trial court's on-record rendition of the verdicts did not refer to the companion charges of aggravated assault, voluntary manslaughter, involuntary manslaughter and homicide by vehicle. The record, however, indicates that on the charging bills of indictment, the official signed verdict of the trial court was not guilty as to each of these four alleged additional offenses.
[8] Section 302(b)(3) reads:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.
18 Pa.C.S.A. § 302(b)(3) (emphasis added).
[9] At the time Coleman was decided, second degree murder contained the same elements which presently constitute third degree murder.
[10] Neither the Commonwealth nor the trial court has pointed to, nor am I aware of, any cases which are factually analogous to the case at bar. The Commonwealth, in support of its position that the evidence established that appellant acted with malice, points to Commonwealth v. Urbanski, 426 Pa.Super. 505, 627 A.2d 789 (1993) and Commonwealth v. Pigg, 391 Pa.Super. 418, 571 A.2d 438 (1990).

In Urbanski, defendant, while intoxicated, operated his vehicle at a high rate of speed and in a reckless and erratic manner, despite his passenger/wife's repeated requests that he stop. Defendant's response to his wife's pleas was to alternately hit the gas and brake pedals, causing his passengers to be flung backward and forward in their seats. Shortly after beginning this wild maneuvering, defendant's vehicle crossed over the oncoming lanes of traffic, crashed violently into a fence and then into a huge boulder. This impact resulted in the death of defendant's wife. This court affirmed defendant's conviction of third degree murder stressing that defendant had a dangerously high blood alcohol level (over twice the legal limit) and that defendant, "was or should have been aware of the danger of driving so fast and so recklessly, especially after having had so much to drink." Urbanski, supra, 426 Pa.Super. at 513, 627 A.2d at 793. The panel also noted that defendant's wife repeatedly reminded him of the danger and asked him numerous times if she could drive the car.
In Pigg, defendant, while intoxicated, drove his 18 wheeled tractor trailer in a reckless manner, running several cars off the road, nearly hitting an oncoming car in its lane of travel and later going up onto the curb and knocking down a sign and pole. The defendant, when he had pulled over momentarily, also refused to listen to a motorist who had observed his erratic driving and had begged him to stop. Ignoring this motorist's pleas, defendant pressed on, travelling down a narrow road and into a blind curve where he crashed into a car in its lane of travel, killing two of the car's occupants. Following defendant's conviction for third degree murder, a panel of this court affirmed this conviction, stressing defendant's severe intoxication (at least three times the legal limit), the lethal and ravaging force of an 18 wheeled tractor trailer and the fact that defendant was aware of the danger he posed to others, yet willfully continued to pursue a dangerous course of conduct.
Based upon my review of these cases, I find that the severe intoxication of each of the defendants is a factor which distinguishes them from the case at bar. The strong component of intoxication present in these cases lends a shocking aspect to the conduct of the defendants and raises their conduct to the level of malice. Such an extreme level of intoxication in a person operating a motor vehicle is an aggravating circumstance which can raise one's conduct, which may otherwise only be considered reckless, to the level of malice. Additionally, I note that in Pigg, the evidence that defendant acted with malice is greater in view of his operation of an instrumentality as large and potentially destructive as an 18 wheeled tractor trailer and the fact that another motorist begged him to stop just prior to the fatal crash.
Finally, both Urbanski and Pigg rely on our supreme court's decision in Commonwealth v. Taylor, 461 Pa. 557, 337 A.2d 545 (1975), where Justice (now Chief Justice) Nix, in a plurality opinion, concluded that defendant, whose car hit two children while they were riding their bicycles, killing one of them, acted with malice when he operated his car at a high rate of speed while intoxicated. The plurality further stated with regard to its finding of malice that, "the trier of fact was . . . justified in imputing to the appellant a consciousness of peril or probable peril to human life [that] his actions caused." Id. at 565, 337 A.2d at 548. Once again, the severe intoxication in Taylor distinguishes it from the present case such that I must conclude that the trier of fact in the case at bar was not justified in imputing to appellant, by virtue of his conduct, "a consciousness of peril or probable peril to human life." Thus, I find the cases cited by the Commonwealth, and relied upon by the majority, unhelpful to the resolution of the present case.
[11] The homicide by vehicle statute provides:

Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic . . . is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death.
75 Pa.C.S.A. § 3732.
[12] See 18 Pa.C.S.A. § 1103(1).
[13] Although the record is silent as to appellant's prior record score, a review of the sentencing transcript reveals that the range of sentences recited by the trial court was consistent with a defendant who possessed a prior record score of two. Thus, I have used this score in computing the minimum sentences for both third degree murder and homicide by vehicle.
[14] See 18 Pa.C.S.A. § 1104(1).
[15] I find this court's recent decision in Commonwealth v. Swann, 431 Pa.Super. 125, 635 A.2d 1103 (1994) more analogous to the case at bar than the third degree murder cases cited supra. In Swann, defendant was speeding, tailgating and swerving as he drove along Roosevelt Boulevard in Philadelphia. As he attempted to change lanes, he lost control of his vehicle, crossed the median and struck another car killing its driver. Following a trial by jury, defendant was found guilty of homicide by vehicle and not guilty of involuntary manslaughter. The trial court subsequently arrested judgment of the homicide by vehicle conviction. On appeal, this court reversed the trial court's order arresting judgment and remanded for resentencing, concluding that the elements of homicide by vehicle had been sufficiently established.
[16] These adjudications of not guilty were not accompanied by any explanation on the record.
[17] See Wanamaker, supra, 298 Pa.Super. at 288, 444 A.2d at 1178.
[18] See Commonwealth v. Boyles, 407 Pa.Super. 343, 350, 595 A.2d 1180, 1184 (1991).
[19] In spite of my comment that, in my view, the evidence would overwhelmingly support convictions for involuntary manslaughter and homicide by vehicle, I am well aware that an appellate court may not disturb the trial court's verdict of not guilty of these alleged offenses. "A defendant is acquitted when the ruling of the judge represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged." MacArthur, supra, 427 Pa.Super. at 411 n. 1, 629 A.2d at 167 n. 1. Reduction of the degree of homicide from third degree murder to involuntary manslaughter or homicide by vehicle, in these circumstances, would violate the principles of double jeopardy. Id. Thus, my comments have been made for illustrative purposes only.
[20] In a vehicular context, malice could be found when a death is caused by a driver who knowingly sped headlong into a group of pedestrians, or engaged in highly dangerous "daredevil" driving, or participated in a dangerous game such as "chicken," or was intoxicated when he engaged in these types of behavior. See Urbanski, supra, at 518, 627 A.2d at 796.